543 So.2d 52 (1989)
Mary Ethel SNELL, Debra Snell, Edith Dorsey, Cynthia Marie Snell, Pam Snell and Newman Snell
v.
UNITED PARCEL SERVICES, INC., Richard K. Delk, and Liberty Mutual Insurance.
No. CA 87 1467.
Court of Appeal of Louisiana, First Circuit.
March 6, 1989.
Writ Denied May 12, 1989.
*53 William C. Dupont, Dupont, Dupont & Dupont, Plaquemine, for plaintiffs-appellants Mary Ethel Snell, Edith Dorsey, Cynthia Marie Snell, Pam Snell and Newman Snell.
Paul Marks, Jr., Mathews, Atkinson, Guglielmo, Marks & Day, Baton Rouge, for defendants-appellees United Parcel Services and Liberty Mut. Ins.
Larry S. Bankston, Camp, Carmouche, Barsh, Gary, Hoffman & Gill, Baton Rouge, for defendant-appellee Century Indemnity Ins. Co.
Before CARTER, LANIER, CRAIN, LeBLANC and FOIL, JJ.
LeBLANC, Judge.
This is a wrongful death case in which the decedent died as a result of injuries sustained in a vehicular collision.

FACTS
On October 8, 1985, decedent, Mrs. Rita Snell, was proceeding west in her station wagon in the left lane of U.S. Interstate Highway No. 10. At the point where the collision occurred, Interstate 10 is a four-lane highway divided by a median. Sometime before the accident in question, a welding machine had fallen off of a truck onto one of the eastbound lanes of traffic and had caught fire. A number of law enforcement officers were on the scene, with their vehicles' emergency lights flashing, by the time Mrs. Snell drove past this point. The record clearly reflects that Mrs. Snell slowed down as she drove by the scene, although her exact speed was not established. It can be speculated that Mrs. Snell was distracted by the flashing lights on the eastbound side of the highway and had slowed down to see what was happening. Regardless, however, the essential fact is that, for whatever reason, Mrs. Snell significantly reduced her speed as she drove past this point.
Almost immediately thereafter, Mrs. Snell's vehicle was struck from the rear by a tractor-trailer truck driven by Mr. Richard Delk in the course of his employment with United Parcel Services (UPS). The rear of the Snell vehicle was thrust partially underneath the front of the UPS vehicle and was badly mangled. Remarkably, Mrs. Snell was fully conscious for approximately thirty-five to forty-five minutes before she lost consciousness and died.
Subsequently, a wrongful death suit was filed by Mrs. Snell's six major children.
*54 Named as defendants in this suit were UPS, Liberty Mutual Insurance Company (UPS's primary liability insurer), Century Indemnity Company (UPS's excess liability insurer), and Richard Delk. However, Delk was never served with plaintiffs' petition and, therefore, is not a party herein.
Following a jury trial, a verdict was rendered against defendants, awarding $125,000.00 for the pain and suffering endured by Mrs. Snell prior to her death and $15,000.00 to each plaintiff for the death of their mother (itemized as $5,000.00 for loss of love and affection, and $10,000.00 for mental anguish). The judgment also awarded $250.00 for medical expenses, $4,100.00 for funeral expenses and $105.00 for property damage. The jury's verdict found Mr. Delk to be 80 percent at fault for Mrs. Snell's death and the decedent herself 20 percent at fault. In accordance with the verdict, the trial court, after reducing the amount awarded by 20 percent, rendered judgment in favor of plaintiffs and against defendants, jointly and in solido, for $175,564.00, plus legal interest and costs. Plaintiffs appealed this judgment, contending the jury erred in assessing their mother with 20 percent fault and in awarding them an inadequate amount for the wrongful death of their mother. In an answer to this appeal, UPS and Liberty Mutual claim that the amount awarded for the decedent's pain and suffering before her death was excessive and should be reduced. In another answer to plaintiffs' appeal, Century seeks to be released from all liability on the basis that under its policy with UPS its exposure does not attach unless a judgment exceeds $200,000.00.

ISSUES
1. Whether the trial court erred in allowing defendants to introduce into evidence the deposition of Mr. Delk?
2. Whether the jury erred in assessing Mrs. Snell with 20 percent fault?
3. Whether the amount awarded plaintiffs for the wrongful death of their mother was inadequate?
4. Whether the amount awarded for Mrs. Snell's pain and suffering was excessive?
5. Whether Century should be liable in solido with the other defendants for the judgment in favor of plaintiffs?

ISSUE ONE
Plaintiffs argue that the trial court erred in allowing defendants to introduce the deposition of Mr. Delk into evidence.
La.C.C.P. art. 1450(3) provides that:
The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: ... (b) that the witness ... is out of this state, unless it appears that the absence of the witness was procured by the party offering the deposition ...; or (d) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena....
In the present case, defense counsel introduced a copy of a letter dated November 18, 1986, from him to the clerk of court requesting that a subpoena be issued to Mr. Delk to appear at the trial of this matter on December 8, 1986. In this letter, defense counsel provided two addresses where attempts to serve Mr. Delk might be made. Although the record does not contain a return on this subpoena, the trial court concluded that defendants had made a reasonable effort to have Mr. Delk subpoenaed for trial. We find no manifest error in this conclusion. See, Byrd v. Cobbs, Allen & Hall Mortg. Co., Inc., 466 So.2d 587 (La.App. 5th Cir.1985); McKinley v. Dalton, 355 So.2d 1033 (La.App. 4th Cir.1978). Accordingly, the Delk deposition was admissible under art. 1450(3)(d).
We also find that its admission was proper under art. 1450(3)(b). Defense counsel testified under oath that he personally contacted Mr. Delk in New York by telephone on two occasions in an attempt to obtain his presence at trial. Defense counsel also provided Kathy Lambert, a Liberty Mutual claims adjuster, with Mr. Delk's telephone number in New York. Ms. Lambert testified that she too tried on several occasions to contact Mr. Delk in New York in an *55 unsuccessful attempt to secure his presence at trial. Thus, it was established that Mr. Delk was out-of-state and that, despite diligent efforts, defendants were unable to procure his presence at trial. The argument by plaintiffs' counsel, both at trial and in his appellate brief, that defendants were responsible for Mr. Delk's failure to appear at trial, is totally unsupported by the record and the trial court specifically concluded this argument was without merit.
The trial court is vested with broad discretion in making a determination as to the unavailability of a witness for the purpose of receiving his deposition in evidence. Giesler v. United States Fidelity and Guar., 498 So.2d 292 (La.App. 4th Cir. 1986). In this case, Mr. Delk's deposition contained a stipulation by counsel that it was being taken for "discovery purposes and for all purposes authorized under the Louisiana Code of Civil Procedure." In view of this fact, as well as the circumstances discussed above, we find that the admission of Mr. Delk's deposition was not an abuse of the trial court's broad discretion. See, McKinley, supra. Further, we are convinced plaintiffs have suffered no prejudice as a result of the admission of the deposition, particularly since it was taken at the request of plaintiffs' counsel and he was the only party to question Mr. Delk at the deposition.

ISSUE TWO
Plaintiffs argue that the jury erred in assessing 20 percent fault to their mother.
In assessing fault, a jury must consider both the nature of each parties' conduct and the extent of the causal relation between the conduct and the plaintiffs' injuries. Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La.1985). A jury's factual findings are entitled to great weight and can not be disturbed on appeal in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). This standard of review is applicable to a jury's determinations as to each party's percentage of fault, since such determinations are factual in nature. Files v. State, DOTD, 484 So.2d 746 (La.App. 1st Cir.1986).
In this case, we conclude that the record supports the jury's determination. The established fact that Mrs. Snell significantly reduced her speed while driving in the passing lane of the highway was undoubtedly a contributing cause of the tragic accident resulting in Mrs. Snell's death. For these reasons, we find no manifest error in the jury's assessment of 20 percent fault to Mrs. Snell.

ISSUE THREE
Plaintiffs contend that the jury award of $15,000.00 to each of them for the loss of their fifty-one year-old mother was inadequate.
The trier-of-fact is given much discretion in fixing the amount of damages due. Scott v. Hosp. Serv. Dist. No. 1, 496 So.2d 270 (La.1986); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). This determination will not be disturbed on appeal unless the trier-of-fact abused its much discretion, and then only to the extent of raising it (or lowering it) to the lowest (or highest) amount which is reasonably within the discretion of the jury. Id.
The plaintiffs in this case are the six major children of the decedent, Mrs. Snell. They range in age from twenty-six to thirty-six. The record reflects that plaintiffs and their mother were a very close and loving family unit. The fact that the plaintiffs' father moved out-of-state when they were quite young and that their mother then raised them alone, undoubtedly contributed to their special closeness. A reflection of this closeness was the family tradition plaintiffs had of attending church with their mother once a month.
Plaintiffs visited with their mother frequently and also regularly spoke to her by phone. They indicated that they often confided in her and that she helped them as much as she could when they had financial difficulties.
In view of the evidence as to the close, loving relationship plaintiffs had with their mother, we find the jury abused its discretion *56 in awarding plaintiffs only $15,000.00. Under the circumstances present, we conclude that $25,000.00 was the lowest amount reasonably within the jury's discretion.

ISSUE FOUR
Defendants contend that the jury award of $125,000.00 for Mrs. Snell's pain and suffering prior to her death was excessive and must be reduced.
As stated above, the trier-of-fact is given much discretion in determining damages. Scott, supra; Coco, supra. This determination will not be disturbed on appeal unless the trier-of-fact abused its much discretion. Id. When it is determined that an abuse of discretion has occurred, an appellate court can then only disturb the award to the extent of lowering it (or raising it) to the highest (or lowest) amount which is reasonably within the discretion of the jury. Id.
In this case, we agree with defendants' contention that an award of $125,000 for Mrs. Snell's pain and suffering was clearly excessive in view of the relatively brief period she survived following the accident. Accordingly, we must lower this award to the highest amount which would reasonably have been within the jury's discretion. Scott, supra; Coco, supra.
While the amount awarded by the jury was excessive, we conclude that a substantial award for Mrs. Snell's pain and suffering is warranted by the record. Mrs. Snell was fully conscious and able to talk for a period of thirty-five to forty-five minutes after the accident. She then quickly lost consciousness and died. By the time she was placed in the ambulance approximately forty-five minutes after the accident, she had no heartbeat. While Mrs. Snell was conscious, she indicated she was in great pain. There was testimony that Mrs. Snell was upset and expressed concern that she might die. Obviously, she was aware of the serious nature of her injuries. Mrs. Snell also indicated a desire to move several times and was instructed to remain still. She was trapped in her vehicle for approximately thirty minutes before the door of her car was pried open, which must have been a terrifying ordeal. During this time, Mrs. Snell experienced difficulty breathing, and it was necessary for oxygen to be administered to her. The immediate cause of her death was respiratory arrest.
Under the circumstances of this case, we find that the highest amount reasonably within the discretion of the jury was $50,000.00.

ISSUE FIVE
In their answer to plaintiffs' appeal, Century complains the trial court erred in holding it liable, in solido, with UPS and Liberty Mutual, since the amount of the judgment in favor of plaintiffs did not exceed the primary limits of the Liberty Mutual policy.
Our review of the record supports Century's contentions. The record establishes that Liberty Mutual is the primary liability insurer of UPS with a policy limit of $200,000.00. Century is UPS' excess liability insurer to which liability does not attach under its policy until a judgment exceeds $200,000.00. The judgment in this case, after amendment by this court, is $163,564.00. Accordingly, the judgment of the lower court is amended to release Century from all liability therein. See, Higgins v. Johnson, 349 So.2d 918 (La.App. 1st Cir.), writs refused, 351 So.2d 161, 162 (1977).

DECREE
For the above reasons, the judgment of the lower court is amended in the following respects:
1. The amount awarded to each plaintiff for the wrongful death of their mother is increased from $15,000.00 to $25,000.00;
2. The amount awarded in Mrs. Snell's survival action for pain and suffering prior to her death is reduced from $125,000.00 to $50,000.00;
3. Century Indemnity Company is released from any and all liability under the judgment of the lower court.
In accordance with these amendments, and after reducing the amended awards by 20 *57 percent, the judgment in favor of plaintiffs is reduced from $175,564.00 to $163,564.00. The judgment is affirmed in all other respects. The costs of appeal are to be paid one-half by plaintiffs and one-half by UPS and Liberty Mutual.
AMENDED AND, AS AMENDED, AFFIRMED.
CARTER, J., concurs in part and dissents in part and assigns written reasons.
CRAIN, J., concurs with increasing the award to the children, but would increase it to $45,000 each. I dissent from reducing the jury award for pain and suffering of the decedent prior to death.
CARTER, Judge, concurring in part and dissenting in part.
I agree with the portion of the majority opinion wherein the defendant was allowed to introduce into evidence the deposition of Mr. Delk. Additionally, although as a trier of fact I would not have found the decedent at fault, I do not find that such assessment by the jury was manifestly erroneous, which finding, in my opinion, was properly affirmed by the majority.
Although I agree with the majority's finding that the jury abused its discretion in awarding each plaintiff only $15,000.00 for the death of their mother, I do not agree that increasing the award to $25,000.00 was the lowest amount reasonably within the jury's discretion. I believe that an award of $45,000.00 for each plaintiff would be the lowest amount that could reasonably be awarded, considering the love, affection and close relationship these children shared with their deceased mother. Louis Archie, et al v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, 543 So.2d 1348 (La.App. 1st Cir.1989); Farlow v. Roddy, 478 So.2d 953 (La.App. 5th Cir.1985), affirmed 493 So.2d 592 (La.1986); Pitre v. Aetna Life and Casualty Company, 434 So.2d 191 (La. App. 3rd Cir.1983), reversed on other grounds, 456 So.2d 626 (La.1984).
In addition to the above, I do not agree that the award of $125,000.00 for decedent's pain and suffering was excessive.
It is well settled that the amount awarded at trial for general damages, including physical and mental pain and suffering, should not be altered on appeal absent an abuse of discretion by the judge or jury.
Prior awards have a limited role. Before a trial court's award can be questioned, the court must look first to the individual circumstances of the case before it. If, after such review and an articulated analysis of facts, the reviewing court concludes the award is excessive, notwithstanding the jury's "much discretion," the court may resort to prior awards in cases with facts and circumstances closely similar to the case before the court. However, such reliance should not be selective, but should be based on the "mass of prior awards" involving truly similar circumstances. Reck v. Stevens, 373 So.2d 498 (La.1979); Terry Wisner v. Illinois Central Gulf Railroad, et al, 537 So.2d 740 (La.App. 1st Cir.1988).
It is not the function of the appellate courts to standardize general damage awards in cases with similar facts. The constitutional role of appellate courts is to guarantee that the trial judge or jury in fulfilling their roles have not so excessively or inadequately abused their much discretion that our conscience would be shocked if such an award was allowed to remain untouched. Terry Wisner v. Illinois Central Gulf Railroad, et al, supra; Hanzy v. Sam, 385 So.2d 355 (La.App. 1st Cir.1980), writ denied, 386 So.2d 357 (La.1980).
A careful review of the record reveals that the decedent was fully conscious and able to talk for a period of 35 to 45 minutes after the accident. She had to be extricated from the terribly mangled vehicle with a "herse tool" or "jaws of life" device. While the decedent had no heart beat approximately 45 minutes after the accident, during the time that she was conscious, she indicated she was in great pain and apparently realized her injuries were critical and *58 would result in her death. Trooper Larry K. Horton testified as follows:
Q. And when you first went up to her car, describe what you did and what you saw?
A. Okay, when I approached her car, I immediately asked her her physical condition. When she told me that her back was hurting and she wanted to get out of the car. At which time I told her, we didn't want to make any attempt to move her if she was complaining of her back being hurt or her back hurting until such time the emergency rescue personnel could arrive at the scene. I stayed with her, attempted to talk to her and give her comfort of mind because that was about all I could do at the time. She gave me the names and telephone numbers of some parties who I could contact. I attempted to keep her talking as much as I could. She told me where she worked, what she did, and we had general conversation, like I said, in attempt to ease her mind until such time as the rescue personnel could arrive at the scene.
Q. Do you remember some of the things that she told you?
A. Well, she told me that she was a school crossing guard. She worked for Iberville Parish.
Q. What was her emotional state that you could see?
A. Her emotional state?
Q. Yes.
A. She was upset about the accident and worried about her physical condition.
Q. And maybe it seems like a question that's obvious, but how did you come to feel that she was concerned about her physical condition? It may seem like an obvious question.
A. As far as statements that she may have made to me. She was upset. She said, if I remember correct, "Oh God, I'm going to die", at which time I tried to give her further comfort.
Q. And you basically just talked to her and tried to comfort her with words?
A. Right.
Q. Was the door of the vehicle able to even just be opened to get her out?
A. I made no attempt to open the door because of what she told me her physical condition was, and I didn't want to take no chance of moving her or anything.
Q. What was her position in the vehicle?
A. She was in an almost laying position. The seat back had been broken. She was not quite in a prone position, but she wasn't sitting up as such.
Deputy Bernette Grevious of the Iberville Parish Sheriff's Department was also present at the time of the accident and testified as follows:
Q. When you talked with Ms. Snell, did she say anything to you?
A. She told me that she was hurting real bad. She say, get her out and get her to the hospital, she say she was hurting real bad. She told me that several times. And, I just told her, bear along, someone is coming. Keep talking to me. Don't stop talking.
Michael L. Hughes, a certified emergency medical technician, was the first emergency medical personnel to arrive at the scene and described the condition in which he found the decedent as follows:
A. She was lying, her feet was on the passenger side. She was lying on her right side kind of on an angle. The seat was bent up, so she was kind of on an angle, but her feet were on the passenger side. I approached from the driver's side.
Q. Okay, did you talk to her?
A. I talked to her.
Q. I presume you would find out how she is before you did anything?
A. Right. First of all I asked her, you know,Told her not to move. I was concerned about her neck, you know, not wanting to move her neck. I asked her where she hurt and she *59 said she hurts all over. I asked her, I said, where do you hurt the most, and I was holding her hand. I got her to squeeze my hand. She could move her hand. She said she hurt all over. I asked her if she could move her toes, and she said she didn't have any feeling in her legs. So, that indicated to me that she had some type of spinal injury. So, I told herShe wanted to move and I told her I needed her to stay just like she was until we could get her out and until we could get her stabalized (sic). I didn't want her to move her neck or anything. I didn't want to cause any movement.
* * * * * *
A. She was emotionally upset. She was understanding what I said, you know. She said, okay, okay. Every time I would tell her something, she would say okay. And when I would ask her, you know, to squeeze this hand or to move her leg or whatever, she responded. She also told me she was having trouble breathing. That's when I got the oxygen from the unit. I applied some oxygen.
Considering all of the above, including the fact that this was a terrible accident and that the decedent was critically injured and realized that her injuries were fatal, I find that the award of $125,000.00 for pain and suffering was well within the discretion of the jury. An award of $125,000.00 for 45 minutes of terrible suffering, coupled with the deceased's knowledge of impending death, clearly does not shock my conscience. I respectfully submit that the majority is in error in finding that the jury award was excessive.
Because of the above rationale and because I have concluded that the damages suffered exceed the $200,000.00 primary coverage of Liberty Mutual, I believe judgment should be rendered against Century, as the excess insurer, for all damages in excess of the $200,000.00 primary coverage.
Therefore, I respectfully concur in part and dissent in part.