665 So.2d 52 (1995)
Doris S. SEAL, Barbara S. Seal, Louise Camp, A.D. Seal and Willie Eugene Seal, Individually and on Behalf of the Estate of Pearlie Seal
v.
BOGALUSA COMMUNITY MEDICAL CENTER and Dr. William P. Crooks.
No. 94 CA 1363.
Court of Appeal of Louisiana, First Circuit.
November 9, 1995.
*53 Mark R. Wolfe, New Orleans, for Plaintiffs/Appellees, Doris S. Seal, Barbara S. Seal, Louise Camp, A.D. Seal and Willie Eugene Seal and Estate of Pearlie Seal.
René J. Pfefferle, Baton Rouge, for Defendant/Appellant, Bogalusa Community Medical Center.
Robert E. Birtel, Metairie, for Defendant/Appellant, William Crooks.
Before LeBLANC, WHIPPLE and FOGG, JJ.
LeBLANC, J.
This is an appeal from a judgment rendered in conformity with the jury verdict in favor of Doris Seal, Barbara Seal, Louise Camp, A.D. Seal[1] and Willie Seal, plaintiffs, and against Bogalusa Community Medical Center (Bogalusa Medical), defendant, finding Bogalusa Medical was negligent in causing the death of plaintiffs' mother, Pearlie Seal. The jury found Dr. William Crooks was negligent; however, Dr. Crooks' negligence was not found to be a cause of Ms. Seal's injuries and death, and Dr. Crooks was dismissed. Plaintiffs were awarded $10,000.00 each. Bogalusa Medical filed a motion for a judgment notwithstanding the verdict (JNOV) solely on the basis of the jury's finding as to the lack of a causal connection between Dr. Crooks' negligence and the damages sustained by the plaintiffs. The motion for JNOV was denied and Bogalusa Medical appealed. Plaintiffs answered Bogalusa Medical's appeal.

FACTS
Pearlie Seal, a long-time patient of Dr. Crooks, was admitted to Bogalusa Medical on July 29, 1985. Ms. Seal was transferred to East Jefferson Hospital on July 30, 1985, for cardiac evaluation. At East Jefferson, Dr. Benjamin Jacobs managed Ms. Seal's cardiac care. An angiography was performed and revealed arteriosclerotic heart disease, totally occluded left coronary artery and right coronary artery, occlusion of one bypass graft with almost total occlusion of a second bypass graft and severe left ventricular dysfunction. Following the angiography, Ms. Seal developed acute renal failure and was eventually placed on hemodialysis to mechanically remove fluids and impurities in the blood. While at East Jefferson Ms. Seal received hemodialysis on Monday, Wednesday, and Friday, September 2, 4 and 6, 1985.
Ms. Seal's condition stabilized and her physicians agreed to transfer Ms. Seal to the skilled nursing facility at Bogalusa Medical. Dr. Crooks agreed to accept Ms. Seal as his patient at the skilled nursing facility and Ms. Seal was transferred on Friday, September 6, 1985. At Bogalusa Medical, Ms. Seal was examined by Dr. Crooks and orders were written for an immediate consult with a nephrologist, a kidney specialist, and daily blood chemical studies. The blood studies were conducted each day; however, the results, which indicated rising levels of blood impurities, were only recorded in Ms. Seal's chart by the nurses at Bogalusa Medical and were not reported to any physician. Ms. Seal did not receive hemodialysis after her transfer from East Jefferson.
By early Monday, September 9, 1985, Ms. Seal's condition had worsened and she began experiencing extreme nausea. Dr. Crooks was notified and ordered a nausea medication. Dr. Crooks arrived at approximately 7:40 a.m. Ms. Seal passed away at 7:45 a.m. Because Ms. Seal had been declared a "no code" patient, instructing the healthcare givers to not use extraordinary means to prolong life, no resuscitation efforts were undertaken by hospital personnel.
*54 The children of Ms. Seal brought this suit for wrongful death and survival damages against Bogalusa Medical and Dr. Crooks. After trial, the jury returned a verdict finding Bogalusa Medical negligent in causing the death of Ms. Seal and finding Dr. Crooks negligent in his care of Ms. Seal, but that his negligence was not a cause of Ms. Seal's death. Damages were awarded in the amount of $10,000.00 in favor of each of the five plaintiffs.
Bogalusa Medical sought a JNOV solely on the issue of the jury's finding of no causal connection between Dr. Crooks' negligence and the damages sustained by the plaintiffs, which was denied. Bogalusa Medical appeals and assigns as error: 1) the award of damages for wrongful death when the deceased had no reasonable chance of survival; 2) the jury finding that the negligence of Dr. Crooks did not cause injury and damage to Ms. Seal and her children; and 3) the trial court's denial of Bogalusa Medical's motion for JNOV. Plaintiffs answered the appeal seeking an increase in the damage award.

LAW AND DISCUSSION
Bogalusa Medical was sued on the basis of the negligent care given to Ms. Seal by Bogalusa Medical. In a medical malpractice action against a hospital, the plaintiff must prove, as in any negligence action, that the defendant owed the plaintiff a duty to protect against the risk involved, that the defendant breached that duty, that the plaintiff suffered an injury, and that the defendant's actions were a substantial cause in fact of the injury. Smith v. State through Dept. HHR, 523 So.2d 815, 819 (La.1988).
Defendant, Bogalusa Medical, argues in its brief that "the conduct of Dr. Crooks and Bogalusa Community Medical Center may have hastened Pearlie Seal's death, but that conduct certainly did not cause Ms. Seal's death or deprive her of a chance of survival." However, the experts who testified at trial, both for the plaintiffs and for each defendant, admitted the lack of dialysis, leading to an increased potassium level, caused Ms. Seal to fall from a class of individuals that would be expected to survive for some time to a class of individuals that would not survive. Dr. Nachman Brautbar, board certified in internal medicine and nephrology, testified the lack of dialysis, which produced lethal levels of potassium, caused Ms. Seal's death, as did Dr. David Edelbaum, also board certified in internal medicine and nephrology, and Dr. Ahmed Manoucherri, a nephrologist.
In Martin v. East Jefferson General Hosp., 582 So.2d 1272, 1278 (La.1991), the Supreme Court stated:
[T]he plaintiff need only prove that the defendant's malpractice resulted in the patient's loss of a chance of survival, and that the plaintiff need not shoulder the `unreasonable burden' of proving that the patient would have survived if properly treated. We have also consistently held that causation is a factual finding which should not be reversed on appeal absent manifest error. [Citations omitted.]
The record contains ample evidence that the negligence of Bogalusa Medical lessened Ms. Seal's chance of survival by failing to provide dialysis for Ms. Seal. This finding by the jury was not manifestly erroneous or clearly wrong.
Next, Bogalusa Medical argues it was error for the jury to find that the negligence of Dr. Crooks did not cause injury to Ms. Seal and her children and for the trial court to deny its motion for JNOV on this issue. Causation is a factual finding which should not be reversed on appeal absent manifest error. Martin v. East Jefferson General Hosp., 582 So.2d at 1278. The Louisiana Supreme Court stated in Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1111 (La.1990):
Where the testimony of expert witnesses differ [sic], it is the responsibility of the trier of fact to determine which evidence is the most credible....
Absent `manifest error' or unless it is `clearly wrong,' the jury or trial court's findings of fact may not be disturbed on appeal.
A review of the record establishes conflicting testimony regarding the issue of causation. Dr. Robert Ryan, board certified in family practice, and Dr. Brautbar each *55 opined Dr. Crooks deviated from medical standards by failing to obtain the results of the laboratory tests he ordered upon Ms. Seal's transfer. However, several doctors who testified opined Dr. Crooks did not breach the standard of care, including Drs. Edelbaum, Gerald Foret, John Guidry and William Keller. Concerning Ms. Seal's failure to receive dialysis, Dr. Ryan testified the ultimate decision concerning dialysis is made by the nephrologist. Dr. Jacobs, Ms. Seal's cardiologist from East Jefferson, testified the orders for dialysis, along with "basically ... [a dialysis patient's] whole care" is given by the nephrologist once they begin dialysis, including ordering the dialysis and laboratory tests.
The record supports the jury's finding that the negligence that reduced Ms. Seal's chance for survival was Bogalusa Medical's failure to carry out Dr. Crooks' order for a nephrologist consult.
The proper standard for review of a motion for JNOV was stated by this court in Petitto v. McMichael, 588 So.2d 1144, 1147 (La.App. 1st Cir.1991), writ denied, 590 So.2d 1201 (1992), wherein we stated:
A trial court may grant a JNOV only when the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable men could not reach a contrary verdict. If there is substantial evidence opposed to the motion, i.e., evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion must be denied.
After a thorough review of the record, we find that the trial court was not manifestly erroneous in denying Bogalusa Medical's motion for JNOV. The evidence does not point so strongly and overwhelmingly in favor of Bogalusa Medical that reasonable men could not conclude Dr. Crooks' negligence did not cause injury to Ms. Seal and her children.
Lastly, plaintiffs argue the jury award of $10,000.00 to each of them for the loss of their mother is inadequate. The trier-of-fact is given much discretion in fixing the amount of damages due. This determination will not be disturbed on appeal unless the trier-of-fact abused its much discretion, and then only to the extent of raising it (or lowering it) to the lowest (or highest) amount which is reasonably within the discretion of the jury. Snell v. United Parcel Services, Inc., 543 So.2d 52, 55 (La.App. 1st Cir.), writ denied, 545 So.2d 1040 (1989).
The plaintiffs in this case are the children[2] of Ms. Seal. The record reflects Ms. Seal was a 73 year old, mother of five, who had been a widow for approximately 20 years. Although her children were grown and had moved away from home, they all maintained a very close and supportive relationship with her. Dr. Crooks testified the Seal family was "very attentive". In earlier years, Ms. Seal had contributed greatly in the rearing of her grandchildren, and often vacationed with her children and grandchildren. Plaintiffs testified they visited with their mother frequently, often spending weekends together. During her stay at East Jefferson, each of her children had attended to her needs, taking shifts so that someone was with her at all times. Even her children who lived as far away as the Shreveport area travelled to be with Ms. Seal during her hospital stay.
Based upon the facts detailed in the record, we find the jury abused its great discretion in this case by not awarding an amount of general damages consistent with the testimony at trial. The lowest award for wrongful death damages supported by the plaintiffs' testimony is $25,000.00.

CONCLUSION
For the above reasons, the judgment of the lower court is amended to award $25,000.00 to Doris Seal, $25,000.00 to Barbara Seal, $25,000.00 to Louise Camp, $25,000.00 to Willie Eugene Seal, and $25,000.00 to Barbara Knight Seal, Almon Dan Seal and Dana Seal Adams. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are to be paid by Bogalusa Community Medical Center.
*56 AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] Plaintiff A.D. Seal died during the proceedings and his widow and children, Barbara Knight Seal, Almon Dan Seal, Jr., and Dana Seal Adams, were substituted as party plaintiffs.
[2] After the death of A.D. Seal, his widow and children were substituted as party plaintiffs.