715 So.2d 1270 (1998)
Rose Y. POMMIER, Plaintiff-Appellee,
v.
ABC INSURANCE COMPANY, et al., Defendants-Appellants.
No. 97-1342.
Court of Appeal of Louisiana, Third Circuit.
July 15, 1998.
Rehearing Denied August 21, 1998.
*1272 Anthony Craig Dupre, Ville Platte, Judy Ann Gic, New Orleans, John D. Rawls, New Orleans, for Rose Y. Pommier.
Kenneth Michael Henke, Lafayette, Berkman James Manuel, Mamou, for Savoy Medical Center and Dr. Thomas Periou.
Before DOUCET, C.J., and COOKS and WOODARD, JJ.
WOODARD, Judge.
Rose Y. Pommier (Pommier) brought a medical malpractice action against defendants, Savoy Memorial Hospital (SMH), ABC Insurance Company, Thomas L. Periou, M.D. (Dr. Periou), and his insurer Louisiana Medical Mutual Insurance Company, nurses, Patrick Landreneau, C.R.N.A. (Certified Registered Nurse Anesthetist) (Nurse Landreneau), Peggy Davis Dauzat, R.N. (Nurse Dauzat), Don Demourille, R.N. (Nurse Demourille), Arthur B. Flick, M.D. (Dr. Flick), and his insurer, Physicians National Risk Retention Group, for a left leg peroneal nerve injury that occurred during her hospitalization for a total right hip replacement surgery in March 1988. From a decision in favor of Pommier by the trial court, sitting without a jury, against Dr. Periou, nurses Landreneau and Dauzat, and SMH in the total amount of $159,838.01, the defendants have appealed. We affirm, modify, and remand.

FACTS
On February 7, 1988, Pommier fell on her right hip at home. She was then fifty-five years old. Complaining of right hip pain, she sought treatment from Dr. Flick, an orthopedist, on two occasions. Dr. Flick did not order any x-rays of her right hip. He left the country on vacation and was unavailable for further consultations, although, before he left, he ordered her to begin physical therapy. She attempted therapy for two weeks without improvement.
On March 3, 1988, she went to the SMH emergency room. There, Dr. Douglas McKay, an orthopedic surgeon, examined her. X-rays were taken of her right hip. After being diagnosed with a fractured hip, she was admitted to the hospital for treatment by Dr. McKay. The next day, she underwent surgery for a total right hip replacement. The SMH surgical team consisted of Dr. McKay, Dr. Periou, the anesthesiologist, and nurses, Dauzat and Demourille, and the nurse anesthetist, Landreneau. The surgery lasted two hours and twenty minutes. During that time, she was immobilized on the operating table on her left side. The operating table was covered with a two-inch thick layer of foam material.
During the operation, an abduction pillow was placed between her legs. It remained in place during her stay in the hospital. Following surgery, nurses, Dauzat and Demourille placed an antiembolism hose on her left leg. While in surgical recovery, it was noted on the Operating Room Nurse's Report that Pommier was able to move her toes on both feet. She testified, as did her family members, that immediately following surgery, she had great pain in her left leg. This was not noted in the nurses' notes. Later, in her room twenty-two hours after surgery, a nurse noted that she had good "CMS" (color, motion, and strength) in both feet.
On March 5, 1988, during his rounds, Dr. McKay discovered that she had left peroneal palsy in her left leg and foot. She could not flex her foot, and she had numbness. This fact was properly documented in his progress notes, along with his comment, "I don't know whether this happened on the operating table or whether it happened postoperatively." However, the doctor testified in his deposition that most probably it occurred on the table. The next day, he ordered that the antiembolism hose be removed from her left leg.
On March 13, 1988, Pommier was discharged from SMH. She was fitted with a left drop foot brace because of left leg peroneal nerve palsy. She contended at trial *1273 that the cause of her palsy was the failure of the team of doctors and nurses that operated on her to properly pad her left knee during surgery. Therefore, unnecessary pressure was placed on the peroneal nerve near her left knee from the operating table.
Following her discharge from the hospital, Dr. McKay followed her on an out-patient basis at his office. He readmitted her on May 4, 1988, to SMH's out-patient department for exploration of her left peroneal nerve. He performed a neurolysis and decompression and discharged her the same day. He recorded in his notes that while he was not sure whether her nerve trauma occurred during surgery or after, he tended to believe that it may have been caused by her antiembolism stocking that had been routinely placed on her leg following her hip replacement surgery. He continued to follow her progress until September 1990.
During the time Pommier was seeing Dr. McKay, Mr. James T. Fontenot, a licensed physical therapist, was giving her physical therapy for her right total hip prosthesis and peroneal palsy. Physical therapy for the latter eventually became unnecessary and was terminated on December 18, 1988, when ninety-five percent of the peroneal nerve function had returned. The physical therapy for the right hip continued until August 24, 1989. Shortly thereafter, she began consulting Dr. Steven Vidrine, her family physician. He was still her family physician at the time of trial in December, 1996.
Pommier consulted with Dr. Vidrine for vascular problems in her right leg beginning September 13, 1995, at which time she was admitted to Ville Platte Medical Center for an evaluation. Dr. Vidrine referred her to Dr. Clyde Redmond, a vascular surgeon in Lafayette, Louisiana. She was hospitalized at Lafayette General Hospital. After multiple vascular surgeries and multiple consultations with different physician specialists, her right leg was amputated below the knee on January 17, 1996. She then underwent rehabilitation until October of 1996 to learn to use the right leg prothesis.
In 1989, Pommier filed a complaint for a Medical Review Panel against Dr. Flick. She then filed a second complaint for a Medical Review Panel, naming Dr. Flick, Dr. Periou, SMH and its employees, nurses, Demourelle, Landreneau, and Dauzat, as defendants. Interestingly, the head of her surgical team, Dr. McKay, who was treating her at the time, was not named as a defendant in any of her complaints.
Two Medical Review Panels were formed: one to consider the complaint against Dr. Flick alone and one to consider all the defendants. Both panels met on June 25, 1990, and rendered decisions on June 27, 1990. In the matter concerning Dr. Flick alone, the review panel found that he did not meet the standard of care. The second review panel found that all the defendants met the standard of care.
Pommier filed suit in Evangeline Parish on September 26, 1990, against Dr. Flick, Dr. Periou, SMH, and SMH employees, nurses, Demourille, Dauzat, and Landreneau. Dr. Flick's insurer went into liquidation, and a Stay Order was issued on November 13, 1991, by the Nineteenth Judicial District Court in East Baton Rouge Parish. She finally settled with Dr. Flick, and the Stay Order was lifted February 3, 1995. Trial was held December 16-18, 1996.
The trial court's Reasons for Judgment were filed June 23, 1997. An Addendum to Reasons for Judgment was filed July 18, 1997. Relying on the evidentiary doctrine of res ipsa loquitur, the trial court held all defendants, except Demoruille, liable for the plaintiff's left peroneal palsy. Damages were awarded as follows: general damages, $100,000.00; medical expenses incurred because of peroneal palsy, $1,654.01; physical therapy charges for peroneal palsy, $206.00; and loss of wages for six years at $9,662.93 per year for a total of $57,978.00. The judgment was signed on July 29, 1997. The defendants suspensively appealed.

ASSIGNMENTS OF ERROR
SMH, Landreneau, and Dauzat assign as trial court errors:
1. Failing to find that plaintiff's orthopedic surgeon, Dr. McKay, who is not a party defendant, violated SMH's policy and Procedure Manual's specifications *1274 for a left lateral decubitus position which was negligence per se and was a primary cause of plaintiff's injuries.
2. Failing to find that plaintiff had been adequately padded and that the reason plaintiff suffered a peroneal nerve palsy in her left leg and foot, was due to her predisposition to this injury, because of the poor circulation that she had in her legs, due to the presence of peripheral vascular disease, which caused the loss of her right leg, below the knee, seven years later at age sixty three.
3. Finding res ipsa loquitur applied to defendant SMH.
4. Failing to find that Nurse Dauzat, and circulating nurse in the operating room was a borrowed employee of the orthopedic surgeon, Dr. McKay, for the purpose of placing his patient in the left lateral decubitus position for a lengthy surgery and that Dr. McKay is vicariously liable as per La.Civ.Code art. 2320 for any liability imposed on Nurse Dauzat. Additionally, the trial court committed error in not finding that Nurse Landreneau, CRNA, was a borrowed employee of defendant, Dr. Periou, Anesthesiologist, for the purpose of vicarious liability as per La.Civ.Code art. 2320 and the jurisprudence thereunder.
5. Finding for the plaintiff, or alternatively the trial court committed manifest error in granting a general damage award of $100,000.00 and a loss of wages of $57,978.00.
Dr. Periou and Louisiana Medical Mutual Insurance Company claim the following trial court errors:
1. In applying the doctrine of res ipsa loquitur in this case where there exist more than one reasonably possible cause of plaintiff's claimed injury.
2. In applying the doctrine of res ipsa loquitur when the injuries claimed by plaintiff could have occurred in the absence of negligence.
3. In finding that plaintiff lost seven years of income when the evidence shows that the problems complained of in this lawsuit were at least ninety-five percent resolved within nine months of the incident and other unrelated problems prevented the plaintiff from returning to work following the incident made the basis of this lawsuit.
4. By failing to assign any percentage of liability to the surgeon who did not comply with local hospital practice and procedure when preparing this patient for surgery.
5. In holding the anesthesiologist, Dr. Periou, responsible for the claimed injury to plaintiff's leg when the expert testimony uniformly held that the anesthesiologist was principally responsible for the patient from the waist up.
6. By allowing an orthopedic surgeon to testify as to the standard of care of an anesthesiologist when the law mandates otherwise.
Pommier claims the following as trial court errors:
1. Whether the trial court awarded general damages so low as to require this court to raise them to the lowest acceptable amount.
2. Whether the trial court erred in not awarding prejudgment interest for the entire period of time that this matter was pending before the trial court.
3. Whether this court should declare the trial court's "Order for Review and Revision of Judgment," signed July 1, 1997, entered on August 6, 1997, to be a nullity and of no effect.

LAW
By reason of an error of law in this case, it is unnecessary for the court to address all of the assignments of error alleged by the parties. We will only address those issues necessary for our decision. We now turn our attention to that error and its consequences.

THE RES IPSA LOQUITUR QUESTION
In its Reasons for Judgment, the trial court stated, in part:
The Court is of the opinion that the doctrine of res ipsa loquitur should apply in the instant case. Dr. McKay testified *1275 that the peroneal nerve injury could have occurred by the positioning and padding of the patient or by the straps used to hold the abduction pillow in place, both of which would have been the responsibility of the team. There were other hypotheses suggested but the Court finds that under the facts adduced these hypotheses as to cause were possible but not reasonable.
Since the defendants have not proved to the satisfaction of the Court any other plausible explanation for the left peroneal palsy the Court finds the defendants, Thomas L. Periou, Patrick Landreneau and Peggy D. Dauzat, equally responsible therefor. Savoy Medical Center is vicariously liable for its employees. The Court finds no liability on the part of Don Demourelle.
(Emphasis added).
Both Dr. Periou and SMH contend that the application of the doctrine of res ipsa loquitur by the trial court in this case was erroneous, as the injuries Pommier complained of could have occurred in the absence of negligence. In Cangelosi v. Our Lady of the Lake Reg'l Med. Ctr., 564 So.2d 654, 665-66 (La.1989), on rehearing, the Louisiana Supreme Court stated:
In order to utilize the doctrine of res ipsa loquitur the plaintiff must establish a foundation of facts on which the doctrine may be applied. S. Speiser, supra, Sec. 2:1, at 30. The injury must be of the type which does not ordinarily occur in the absence of negligence. Restatement, supra, Sec. 328D(1)(a). In other words, "the event must be such that in light of ordinary experience it gives rise to an inference that someone must have been negligent". W. Prosser & W. Keeton, supra, Sec. 39, at 244. The basis on which this conclusion is drawn is usually knowledge common to the community as a whole, although in cases such as medical malpractice expert testimony may be used to establish this principle. Id. at 247; Restatement, supra, Sec. 328D, comment d. The plaintiff does not have to eliminate all other possible causes or inferences, but must present evidence which indicates at least a probability that the injury would not have occurred without negligence. W. Prosser & W. Keeton, supra, Sec. 39, at 248; S. Speiser, supra, Sec. 2:4.
The facts established by plaintiff must also reasonably permit the jury to discount other possible causes and to conclude it was more likely than not that the defendant's negligence caused the injury. Restatement, supra, Sec. 328D(1)(b); S. Speiser, supra, Sec. 2:5. Again, the plaintiff does not have to eliminate completely all other possible causes, but should sufficiently exclude the inference of his own responsibility or the responsibility of others besides the defendant in causing the accident. The inference of negligence points to the defendant when the conduct of others is eliminated as a more probable cause. Restatement, supra, Sec. 328D, comment I; W. Prosser & W. Keeton, supra, Sec. 39, at 254. The plaintiff must show not only that an accident occurred or that the accident was caused by the negligence of someone, but also that the circumstances warrant an inference of defendant's negligence.
The plaintiff must also establish that the defendant's negligence indicated by the evidence falls within the scope of his duty to the plaintiff. Restatement, supra, Sec. 328D(1)(c). This is often but not necessarily, proved by a showing that the defendant was exclusive control of the injury-causing instrumentality.
(Footnote omitted.) (Emphasis added.)
To this point, application of res ipsa loquitur might seem to be appropriate, however, in Dardeau v. Ardoin, 97-144, p. 6 (La.App. 3 Cir. 11/5/97); 703 So.2d 695, 698, this court held that the doctrine of res ipsa loquitur is not applicable in a medical malpractice case where the nerve injury complained of "is a recognized complication of the surgery undergone [by the plaintiff]." Further, the complication may be "a remote one" so long as "all experts agree." See also Elkins v. Key, 29,977 (La.App. 2 Cir. 10/29/97); 702 So.2d 57; James v. Gordon, 95-1472 (La. App. 3 Cir. 12/4/96); 690 So.2d 787, writ denied, 97-756 (La.5/1/97); 693 So.2d 738. As discussed below, this case is unlike the situation in LaCombe v. Dr. Walter Olin *1276 Moss Regional Hospital, 617 So.2d 612 (La. App. 3 Cir.), writ denied, 626 So.2d 1187 (La.1993) where this court held the res ipsa loquitur doctrine applicable involving a case in which the experts agreed the nerve injury complained of was not a known risk of the surgery.
In the instant case, the evidence in the record establishes that a peroneal nerve injury may occasionally, and infrequently occur on the contralateral leg during hip replacement surgery in the absence of negligence. Pommier's expert witnesses, orthopedists Dr. Alan Holderness and Dr. Frank Anders, agreed that this fact was true. Dr. Douglas McKay, Pommier's treating surgeon, an orthopedist, agreed that this fact was true, and Dr. Periou's expert witness and member of the Medical Review Panel, orthopedist, Dr. Gregory Gidman, testified that this was true. Dr. Gidman testified that he had seen peroneal nerve injuries develop when the knee was properly padded, but that it did not happen very often.
This evidence leads to only one conclusion in which the experts in this case agree peroneal nerve injury on a contralateral leg is a recognized complication of hip replacement surgery. As such, this fact could not be discounted by the trial court as a possible cause of the injury. Significantly, Pommier's proof did not rebut this fact, and she could not do so in view of her experts' agreement that it was true. Since it could not be discounted as a possible cause of the injury in this case, even though a remote one, the trial court erred in applying the res ipsa loquitur doctrine. Dardeau, 703 So.2d 695; see generally, Shahine v. Louisiana State Univ. Med. Ctr., 28,691 (La.App. 2 Cir. 9/27/96); 680 So.2d 1352, writ denied, 96-2624 (La.12/13/96); 692 So.2d 1066; Melancon v. LaRocca, 94-639 (La.App. 5 Cir. 1/3/95); 650 So.2d 371. This was reversible error.
When there is a reversible error of law, the court of appeal is required to redetermine the facts de novo from the entire record and render judgment on the merits. Gonzales v. Xerox Corp., 320 So.2d 163 (La. 1975); Wooley v. E.J.D. Builders, Inc. 94-955 (La.App. 5 Cir. 1/30/96); 668 So.2d 1221, writ denied, 96-506 (La.4/8/96); 671 So.2d 338; Augustus v. St. Mary Parish Sch. Bd., 95-2498 (La.App. 1 Cir. 6/28/96); 676 So.2d 1144. Consistent with this mandate, we now examine the evidence in the record to determine the possible liabilities of the defendants.

THE SURGICAL TEAM'S LIABILITY
The legal standards by which we must evaluate the facts in this record in relation to the various defendants' potential liability are as follows:

THE PHYSICIANS
La.R.S. 9:2794 states, in part:
A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., ..., the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, ... licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, ... within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
....
C. In medical malpractice actions the jury shall be instructed that the plaintiff has the burden of proving, by a preponderance of the evidence, the negligence of the physician, ... The jury shall be further instructed that injury alone does not raise a presumption of the physician's, ... negligence. The provisions of this Section shall not apply to situations where the doctrine *1277 of res ipsa loquitur is found by the court to be applicable.

THE NURSES
Nurses, who perform medical services, are subject to the same standards of care and liability as are physicians. Donaldson v. Sanders, 94-1366 (La.App. 3 Cir. 7/19/95); 661 So.2d 1010, writ granted, 95-2940 (La.2/28/96); 668 So.2d 363 (The case settled before the Louisiana Supreme Court heard oral argument.); Belmon v. St. Frances Cabrini Hosp., 427 So.2d 541 (La.App. 3 Cir.1983); Butler v. Louisiana State Bd. of Educ., 331 So.2d 192 (La.App. 3 Cir.) cert. denied, 334 So.2d 230 (La.1976).

THE HOSPITAL
In a medical malpractice action against a hospital, the plaintiff must prove that defendant, here acting through its nurses, owed plaintiff a duty to protect against the risk involved, that the defendant breached that duty, that the plaintiff suffered injury, and that defendant's action were a substantial cause in fact of injury. Farmer v. Reyes, 95-0734, 95-0735 (La.App. 4 Cir. 11/16/95); 665 So.2d 129; Seal v. Bogalusa Community Medical Center, 94-1363 (La. App. 1 Cir. 11/9/95); 665 So.2d 52. A hospital is responsible for the negligence of its employees, including nurses, under the doctrine of respondeat superior. Gibson v. Bossier City Gen. Hosp., 594 So.2d 1332 (La. App. 2 Cir.1991).

THE STANDARD OF CARE
According to the SMH hospital policy and procedures manual, the responsibility for properly positioning and padding Pommier's bony areas, including her knees, during surgery was the responsibility of the nurse, anesthetist, and the surgeon. It states:
Safe positioning of the patient for surgery is a shared responsibility of Nurse, Anesthetist, and Surgeon. It calls for the applications of the principles of anatomy and anatomy & physiology as well as a diligent surgical conscience....
It is an unquestioned fact that properly padding Pommier for her surgery to prevent a nerve injury, as occurred here, was a recognized standard of care for the entire surgical team, of which Dr. Periou, Dr. McKay, and the nurses, Dauzat and Landreneau, were a part. All the members of the surgical team, including Dr. McKay, who was not named in the suit, were responsible to insure she was properly padded. We do not find that Dr. Periou's contention that he was only responsible for Pommier's padding from the waist up to be persuasive for reasons of public policy. Nor do we deem it significant that the surgeon might delegate this responsibility or that the team members might divide it up and designate certain body parts to certain team members. These internal choices do not abdicate each team member's legal responsibility to insure proper padding of the patient as a whole.

THE BREACH OF THE STANDARD OF CARE
Pommier's expert witness, an orthopedist, Dr. Allan W. Holderness, testified that in his opinion the SMH follows the team concept for positioning a patient for surgery, which involves the surgeon, the anesthesiologist, and the circulating room nurse. He testified that, based upon his review of the medical records, he could not find any evidence of padding under her left knee; that "the most plausible cause of [her] peroneal palsy is lack of proper padding for [the] patient during the operation while she was in the lateral dicubitus position"; and that this was a deviation from the standard of care.
Another of Pommier's expert witnesses, an orthopedist, Dr. Frank Anders, testified that Dr. Douglas W. McKay was his associate in practice in March 1988 and that he, Dr. Anders, first saw her as a patient on March 12, 1988; that he found she has nosocomical foot drop on the left; that her peroneal nerve injury was more likely than not the result of the position in which she lay on the table during surgery; and that "[i]n the absence of any other history or any other information, I think that's probably the case."
Another of plaintiff's expert witnesses, Nurse Rothenberger, testified that placing and padding of a patient in the lateral decubitus position is a matter of a national standard; that she examined the Operating Room Nurses' Report and the anesthesia *1278 record and that, based upon her review of these medical records, there was a deviation from the standard of care in positioning the patient that probably caused the injury, as well as a deviation from the standard of documentation that is expected from nurses. She further noted that, based on the documentation, the only padding used was the "beanbag," which positions the upper body, and that this was a deviation from the standard of care. Given her experience and expertise, she also believed that the circulating room nurse deviated from the standard of care by failing to properly document the final position check of the patient in the records. She also opined that the peroneal nerve palsy was probably caused by inadequate, or the absence of, padding during surgery, specifically the bony prominence of the knee.
Dr. McKay, the plaintiff's treating physician, testified that he went into the operating room while the right hip area was being prepped for surgery and checked her position but that he did not pad her knee. All the members of the operating team thought that it was done. After the palsy was detected, Dr. McKay conducted an investigation to determine its cause, including talking to Dr. Periou and the operating room nurse but could not determine for certain the reason for the palsy. He testified that, statistically, the nerve injury would have happened on the operating table.
Pommier testified that immediately following surgery she felt intense pain in her left leg. Her family confirmed this evidence. This is consistent with the nerve injury happening in the operating room from a lack of proper padding as it would immediately manifest itself.
This evidence of breach of standard of care and causation of the injury must be evaluated along with the following.
Nurse Dauzat testified that she could not specifically remember her actions concerning Pommier's operation but that it was her normal practice with total hip replacements to pad the bony prominence from the edge of the "bean bag," which is used to position the patient's upper body in place, down to the foot and toes. The bony prominence of the ankle and knee areas would be definitely padded. She remarked that she filled out the Operating Room Nursing Report and that she wrote "left lateral bean bag" and "safety straps were secured to patient." She did not document the rest of the padding used on Pommier, but she said it was not her practice to do so and that the lack of such documentation does not mean extra padding was not used. She urged that there was no doubt in her mind that Pommier's knee was padded as it was a standard of nursing care drilled into her head from nursing school days. Nurse Dauzat did testify that at the time of Pommier's operation, she knew the patient's history, i.e., the failure to x-ray by Dr. Flick, and that all personnel in the operating room wanted to be very cautious with her. One would expect thorough documentation to be a part of that caution; however, that was not done in this case.
Nurse Landreneau was the anesthetist in the operating room during Pommier's operation. He performed his duties during the operation under the supervision and control of the anesthesiologist, Dr. Periou. Dr. Periou testified that, along with the nurses, Nurse Landreneau checked the padding on Pommier's bony prominences. Landreneau testified it was his practice to "take great precautions beforehand" to check the padding of a patient.
The Medical Review Panel opined on June 27, 1990, that "[t]he evidence does not support the conclusion that the defendant, Dr. Thomas Periou, failed to meet the applicable standard of care as charged in the complaint." Dr. Periou testified that he checked Pommier's padding before the operation began.
The evidence established that Pommier suffered from peripheral vascular disease for years previous to the operation in 1988 and that in 1996 she had to have her right leg below the knee amputated as a result of the disease. Three physicians, Dr. Anders, Dr. Holderness, and Dr. Greg Gidman, testified that it was possible that this disease could have impaired the circulation to the left peroneal nerve and caused her to have a pre-disposition to nerve injury from compression. This was a possibility if the first pain Pommier *1279 had suffered would have been twenty-two hours after the surgery, as opposed to immediately afterwards as she and her family testified was the case. And, as previously discussed, Dr. McKay's notes indicated, the injury may have been caused by the antiembolism hose placed on her leg after surgery, although he thought the most probable explanation was that the injury had occurred on the operating table. Last, as discussed above, four expert witnesses, all orthopedists, testified that left peroneal nerve injury was a complication of hip replacement surgery and could occasionally occur in the absence of negligence on anyone's part.
Pommier bore the burden of proof by a preponderance of the evidence of the surgical team's breach of the standard of care and that this breach caused her injury. This requires a "more probable than not" analysis, not a "possibility" or "beyond a reasonable doubt" analysis. Several possibilities and speculation were offered to explain the cause of Pommier's injury. On this record, the proof establishes that the most probable explanation for Pommier's injury was negligence of the SMH surgical team; namely, Dr. McKay, Dr. Periou, and Nurses Landreneau and Dauzat. In finding liability, the trial court held SMH vicariously liable for its employees' conduct, specifically nurses, Landreneau and Dauzat. We find this appropriate and affirm that ruling.
DR. MCKAY AND THE COMPARATIVE FAULT CONSTITUTIONALITY ISSUE
Pommier did not name Dr. McKay, her treating physician and surgeon, in the suit as a defendant, and the trial court apparently did not consider his liability when assigning fault. Notwithstanding, La.Civ.Code art. 2323 requires that a determination be made as to all participants' fault regardless of whether the person is a party to the suit or not. The statute was amended in 1996 is to be retroactively applied. Keith v. United States Fidelity & Guaranty Co., 96-2075 (La.5/9/97); 694 So.2d 180. Thus, the trial court's omission was error. Our de novo review to the record, reveals that Dr. McKay shares fault with the other defendants, who were members of the SMH surgical team, for the injuries Pommier sustained. However, in the trial court, Pommier has raised a constitutional challenge to article 2323 and has placed the Attorney General of Louisiana on notice of her intent to raise this constitutional issue of a non-party being cast in comparative fault should the trial court have applied article. 2323 and found Dr. McKay at fault. Thus, prior to assigning a percentage of fault to Dr. McKay in conjunction with the rest of the surgical team, the court must determine whether 2323 is constitutional. We remand for the determination of constitutionality and assignment of fault. See e.g., Vallo v. Gayle Oil Co. Inc., 94-1238 (La.11/30/94); 646 So.2d 859.

DAMAGES

(1) LOST WAGES
The trial court awarded $57,978.00 to Pommier for lost wages from September of 1989 until September of 1995. This figure was based upon six times her annual salary, which is not in dispute, rounded off to the nearest dollar. In their appeals, Dr. Periou and SMH question this award.
Pommier's physical therapist testified that by August of 1989, her left foot had reached maximum medical improvement. Prior to her hip replacement surgery, she worked as a seamstress. She testified that she could not work during those six years, as she would not have been able to operate the pedal of the large sewing machine with one foot. Dr. McKay and Dr. Holderness agreed that the peroneal nerve palsy affected her ability to lift her left foot up. Because of her foot drop she would not be able to lift the pedal up fast enough to be a productive worker. Pommier made no claim for lost wages after September of 1995, when her right leg developed problems leading to its amputation.
We find that the record adequately supports the trial court's award of lost wages in the amount of $57,978.00, and we affirm the judgment against the defendants in that amount.

(2) GENERAL DAMAGES
The trial court awarded general damages in the amount of $100,000.00. On appeal, SMH contends that this amount should have been $20,000.00. Pommier, in *1280 answering the appeal, urges that the general damages should be raised to $250,000.00.
In awarding general damages, "the discretion vested in the trier of fact is `great,' and even vast, so that an appellate court should rarely disturb an award of general damages." Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The appellate court's inquiry is whether the particular award is a clear abuse of the trier of fact's much discretion "for the particular injuries and their effects under the particular circumstances on the particular injured person ..." Id., 623 So.2d at 1260. Only after determining that there has been a clear abuse of discretion, should an appellate court look to prior awards for the purpose of determining the highest or lowest reasonable award amount. Id.
The record establishes that Pommier had difficulty in attempting to correct the palsy in the first couple of months and she had to have outpatient surgery to repair the nerve. After nine months of physical therapy, her left leg reached maximum medical improvement. The record discloses evidence that the palsy significantly impacted her lifestyle and general attitude towards life. The trial court found that the "small degree of impairment in this claimant [Pommier], however, is compounded because of her other obvious problems [right hip replacement and the amputation of her lower right leg]. The court finds that the pain and suffering and residual disability suffered by claimant would be adequately compensated by an award of $100,000.00." Reviewing the record as a whole, we do not find that the trial court abused its "vast" discretion in the award of general damages. Finding no abuse, it is unnecessary for us to review other awards.
This portion of the trial court's decision concerning general damages is affirmed.

PREJUDGMENT INTEREST
The trial court suspended prejudgment interest in the judgment for a part of the time that this case was pending. This was from November 12, 1991, which was the date that Dr. Flick's insurance company, Physician's National Risk Retention Group, Inc., secured a stay order in the Nineteenth Judicial District Court, until February 3, 1995, which was the date that the stay order was lifted in this litigation. This was clearly erroneous.
La.R.S. 13:4203 states: "Legal interest shall attach from date of judicial demand, on all judgments, founding in damages, `ex delicto,' which may be rendered by any of the courts." The statute is clear and unambiguous. No further interpretation is necessary. La.Civ.Code art. 9. This portion of the trial court's judgment is reversed. Pommier is awarded full prejudgment interest on the damage award from the date of judicial demand.

THE AMENDED JUDGMENT
On June 23, 1997, the trial court filed its Reasons For Judgment. On July 17, 1997, it filed an Addendum to Reasons For Judgment filed June 23, 1997. On July 29, 1997, it entered its judgment. After the delays for a new trial had run, on August 6, 1997, SMH presented the trial court with a Motion and Order For Review and Revision of the Judgment signed July 1, 1997. It should be noted that no such judgment of July 1, 1997, exists. The trial court signed the Order that same day. The Motion and Order stated, in part:
1.
The judgment signed does not reflect the change made in the Addendum to Reasons for Judgment concerning liability (a copy of the Addendum to Reasons for Judgment, the Reasons for Judgment and the Judgment are attached hereto.)
IT IS ORDERED that a review and revision of the signed Judgment be granted to defendant SAVOY MEDICAL CENTER, INC., to review and revise the item of liability as it was addressed in the Addendum to Reasons for Judgment.
The question before this court is whether or not the judgment that was amended on motion of SMH is a nullity. La.Code Civ.P. art.1951 states:
A final judgment may be amended by the trial court at any time, with or without *1281 notice, on its own motion or on motion of any party.
(1) To alter the phraseology of the judgment, but not the substance; or
(2) To correct errors of calculation.
(Emphasis added.)
It is unquestioned that the amendment to the judgment, by revising an item of liability, was a substantive modification of the judgment of July 29, 1997. Thus, it is a nullity. La.Code Civ.P. art.1951; See Magill v. State, Dept. of Public Safety & Corrections, 27,802 (La.App. 2 Cir. 1/24/96); 666 So.2d 1260.

CONCLUSION
The trial court committed error in the application of the evidentiary doctrine of res ipsa loquitur to the defendants in this case. Our subsequent de novo review of the record establishes a basis for imposition of liability on all the members of the surgical team that operated on Pommier; that is Dr. McKay, Dr. Periou, Nurses Landreneau and Dauzat, and SMH through the principle of vicarious liability. The trial court's decision is affirmed as modified. This matter is remanded for a determination of the percentages of fault among the surgical team, including Dr. McKay, and for a ruling on Pommier's unconstitutionality challenge to La.Civ.Code art. 2323. The trial court's damage awards are affirmed and that portion of the trial court's decision not awarding prejudgment interest is reversed. The trial court's modification to the judgment of July 29, 1997, is a nullity. The defendants are equally cast for all costs of this appeal.
AFFIRMED AS MODIFIED AND REMANDED.
COOKS, J., concurs.
DOUCET, C.J., concurs and assigns written reasons.
DOUCET, Chief Judge, concurring and assigning written reasons.
I agree with the trial court in its reasoning on all issues, except that of prejudgment interest. On that issue I agree with the majority's position amending the trial court judgment to award interest from the date of judicial demand.