728 So.2d 1027 (1999)
Juanita P. KING, et vir., Plaintiffs-Appellants,
v.
STATE of Louisiana, Through the DEPARTMENT OF HEALTH AND HOSPITALS, LSU Medical Center Shreveport, Defendants-Appellees.
No. 31,651-CA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1999.
*1028 Broussard, Bolton, Halcomb & Vizzier by Dorwan G. Vizzier, Alexandria, Counsel for Appellant.
Booth, Lockard, Politz, Lesage & D'Anna by Bennett L. Politz, Alexandria, Counsel for Appellee.
Before BROWN, GASKINS and PEATROSS, JJ.
BROWN, J.,
In this medical malpractice case, plaintiffs, Juanita P. King and Sammie J. King, appeal the judgment of the trial court rejecting their claims against Louisiana State University Medical Center in Shreveport ("LSUMC").[1] For the reasons stated herein, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND
On May 26, 1987, Juanita King, age 44, while under the care of Dr. Robin Lake, was admitted to LSUMC in Shreveport for a cardiac catheterization due to chest pains. On May 27, 1987, she was advised that she needed immediate quadruple bypass surgery; however, Mrs. King, who also had a history of insulin dependant diabetes, disregarded medical advice and checked herself out of LSUMC. On May 30, 1987, Mrs. King returned to LSUMC and on June 1, 1987 underwent successful quadruple coronary artery bypass surgery. The surgery was performed by Dr. Jane Eggerstedt, Director of Cardio-Thoracic Surgery, and Dr. David Mull, a fourth year resident.
On June 9, 1987, Mrs. King was discharged and returned to her home in Winnsboro, Louisiana. On June 22, 1987, Dr. Mull, assisted by Nurse Marilyn Halsey,[2] examined Mrs. King at LSUMC in her first follow-up visit after her surgery. At that time, Mrs. King had a sternal surgical wound with drainage. Dr. Mull removed the stitches and opened the portion of the wound that was draining. He left that portion of the wound open with instructions for Mrs. King to keep it packed with gauze. He also took a culture from Mrs. King's wound and scheduled her for a return visit on July 22, 1987.
*1029 On June 26, 1987, Mrs. King's temperature rose to over 100° and at about 4:00 p.m. she called LSUMC and spoke to Nurse Halsey. After referring to the culture report, Nurse Halsey informed Mrs. King that the test had revealed three infections, two normal and one abnormal for that type of operation. Nurse Halsey instructed Mrs. King to return that day to LSUMC for examination and evaluation but Mrs. King refused, stating it was too far to travel from Winnsboro to Shreveport in her condition.[3] Mrs. King then requested Nurse Halsey have one of the physicians prescribe an antibiotic or other medication over the phone, but Nurse Halsey refused and again stated that she should be seen at LSUMC that day. Again, Mrs. King refused to comply and apparently Nurse Halsey instructed her to contact her local doctor.[4] Mrs. King then attempted to contact Dr. Lake's office which unfortunately had already closed for the weekend.
On June 29, 1987, Mrs. King was successful in relating her history and symptoms to Dr. Lake's office in Monroe and made an appointment for July 2, 1987. On July 2, 1987, after seeing Dr. Lake, she was admitted to North Monroe Medical Center and then transferred to St. Francis Hospital in Monroe, where she underwent an additional surgery to remove tissue and a portion of her sternum which were affected by the infection. On July 14, 1987, Mrs. King was released from St. Francis with the surgical wound left open to heal.
The open surgical wound required cleaning and dressing several times daily and took several months to heal, during which time Mrs. King was confined to her bed and home, and experienced significant pain and discomfort. As a result of the second surgery, Mrs. King now suffers from shortness of breath and shoulder pain.
This matter was presented to a Medical Review Panel composed of Dr. Thomas Keith Jones, Dr. Sarjit Gill and Dr. James M. Ciaravella. The panel rendered its opinion on July 27, 1992, and unanimously held that the evidence did not support the conclusion that the defendants failed to meet the applicable standard of care as charged in the complaint.
On September 4, 1992, plaintiffs, Juanita and Sammie King, filed the instant action in tort, complaining of negligent treatment by a physician and a nurse, specifically naming Dr. David H. Mull and Marilyn Halsey De-Vault, among other not named employees, personnel, etc. of Louisiana State University Medical Center-Shreveport. Trial was held herein on March 3-4, 1998 with the court rejecting plaintiffs' demands. Plaintiffs have appealed.

DISCUSSION
In this case, plaintiffs argue that the trial court erred (1) in allowing cardiovascular surgeons, who served on the medical review panel, to issue opinions concerning the standard of care required of a registered nurse and (2) in limiting the standard of care required of Nurse Halsey to only advising the plaintiff in their telephone conversation to return to Shreveport for examination and evaluation or, alternatively, to seek medical attention elsewhere.

Expert Testimony
Plaintiffs argue that the trial court committed an error of law in allowing the medical review panelists to offer expert testimony regarding the standard of care Nurse Halsey owed to Mrs. King.
Under La. R.S. 40:1299.39.1, no medical malpractice action against the state, its agencies, or a person covered by this part, or his insurer, may be commenced in any court before the claimant's complaint has been presented to a state medical review panel unless both parties agree to waive its use. When multiple parties are named as defendants in a medical malpractice action, which include a physician or a hospital, the medical review panelists shall have the minimum qualifications of being physicians. La. R.S. *1030 40:1299.39.1 C(3)(f)(v). When none of the defendants are a physician or a hospital but are at least a registered nurse, the panelists shall have the minimum qualifications of also being registered nurses. Id.
Since the named defendants consisted of a hospital, LSUMC-Shreveport, a physician, David Mull, M.D., and a registered nurse, Marilyn Halsey, R.N., it was statutorily required under La. R.S. 40:1299.39.1 C(3)(f)(v) that the medical review panel be composed only of physicians. Consequently, those physicians were required by statute, La. R.S. 40:1299.39.1(G), to evaluate whether any named defendant committed medical malpractice, which included Nurse Halsey. In forming their opinion, the panel had to determine the standard of care Nurse Halsey owed to Mrs. King.
The panel's sole duty is to express its expert opinion as to whether or not the evidence supports the conclusion that the defendant or defendants acted or failed to act within the appropriate standards of care as charged in the complaint. La. R.S. 40:1299.39.1(G). The panel's opinion, while not controlling, is persuasive and admissible expert evidence in a medical malpractice suit. La. R.S. 40:1299.39.1(H); Derouen v. Kolb, 397 So.2d 791 (La.1981).
Physicians frequently testify about nursing standards because nurses who perform medical services are subject to the same standards of care and liability as are physicians. Arguably, one is dealing with a single standard of care under the circumstances of this case. See e.g., Gibson v. Bossier City General Hosp., 594 So.2d 1332 (La.App. 2d Cir.1991); Ard v. East Jefferson General Hosp., 636 So.2d 1042 (La.App. 5th Cir.1994); Ewing v. Aubert, 532 So.2d 876 (La.App. 1st Cir.1988), writ denied, 551 So.2d 1333 (La.1989). We find no error of law in this assignment.

Standard of Care
Plaintiffs also claim that the trial court erred by setting an inadequate standard of care for Nurse Halsey. For the following reasons, we find no error.
A nurse who practices her profession in a particular specialty owes to her patients the duty of possessing the degree of knowledge or skill ordinarily possessed by members of her profession actively practicing in such a specialty under similar circumstances. It is the nurse's duty to exercise the degree of skill ordinarily employed, under similar circumstances, by members of the nursing profession in good standing who practice their profession in the same specialty and to use reasonable care and diligence, along with his/her best judgment, in the application of his/her skill to the case. Nurses who perform medical services are subject to the same standards of care and liability as are physicians. Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d 654 (La.1989); Gibson v. Bossier City General Hosp., supra; Pommier v. ABC Ins., Co., 97-1342 (La.App. 3d Cir.07/15/98), 715 So.2d 1270; Ewing v. Aubert, supra.
Defendants' experts testified and agreed that Nurse Halsey's standard of care required her to instruct Mrs. King to return to LSUMC that day or, alternatively, to seek medical attention elsewhere if possible.[5] Plaintiffs' experts testified that the court should have set the standard of care higher, maintaining that the following additional acts were required: 1) Mrs. King should have been informed of the urgency of her situation; 2) Mrs. King should have been advised that she must see a physician within 24 hours; 3) Nurse Halsey should have determined if a physician, hospital or emergency room were locally available to Mrs. King and whether she could get there; 4) Nurse Halsey should have obtained an agreement with Mrs. King that she would get treated within 24 hours; 5) Nurse Halsey should have documented the conversation with Mrs. King in her medical record; and 6) Nurse Halsey should have followed up on Mrs. King's status after 24 hours had passed and LSUMC-Shreveport had not been contacted by a physician *1031 or emergency room concerning Mrs. King.[6]
When expert opinions contradict concerning compliance with the applicable standard of care, the trial court's conclusions on this issue will be granted great deference. It is within the province of the fact finder to evaluate the credibility of such experts and their testimony. Shahine v. State Univ. Med. Center, 28,691 (La.App.2d Cir.09/27/96), 680 So.2d 1352; Gibson v. Bossier City General Hosp., supra.
The trial court considered all the expert testimony and concluded that Nurse Halsey met her standard of care when she advised Mrs. King to return to LSUMC for examination and evaluation, or alternatively, to seek medical attention elsewhere as soon as possible. We find no manifest error in this determination.

CONCLUSION
For the reasons set forth above, the trial court judgment is AFFIRMED at plaintiffs' costs.
NOTES
[1] Juanita King was seeking damages for personal injuries and Sammie King was seeking damages for loss of consortium, society and services.
[2] Nurse Marilyn Halsey, now known as Nurse Marilyn DeVault, was employed as a cardiothoracic coordinator at LSUMC in June of 1987.
[3] Winnsboro, Louisiana is located approximately 140 miles from Shreveport.
[4] Mrs. King denies that Nurse Halsey told her to seek alternative care, however, Dr. Eggerstedt testified that she was certain that Nurse Halsey had so instructed and Nurse Halsey testified that it was her normal practice.
[5] Defendants' experts were Janice Soderstrom, R.N., James Ciaravella, M.D., and Sarjit Gill, M.D., the latter two also served as medical review panelists.
[6] Plaintiffs presented Jacqueline Schexnyder, R.N. and Robbie Stone, R.N., as experts in the field of nursing.