WILLIAMS, J.
 

 hThe plaintiff, William James Reilly, appeals the district court’s grant of summary judgment in favor of the defendants, Christus Health Northern Louisiana, d/b/a Christus Schumpert Health System (“Schumpert”). For the following reasons, we affirm. We remand this matter to the district court for further proceedings.
 

 FACTS
 

 On December 18, 2005, the plaintiff was seriously injured when a horse fell on him at his place of employment, Louisiana Downs, in Bossier City, Louisiana. The plaintiff was initially treated for his injuries in the emergency room of Willis Knighton Medical Center, where tests revealed that he had multiple pelvic fractures, a large hematoma in the pelvic area and a small disc herniation at L5-S1. The emergency room staff inserted a Foley catheter into the plaintiffs penis and threaded it through his urethra into his bladder to allow his urine to drain; the plaintiff was admitted to the orthopedics unit at Willis Knighton.
 

 On December 23, 2005, the plaintiff was admitted to Christus Schumpert-Bossier for rehabilitation and treatment. Dr. Clinton McAlister was the admitting physician. One day following the plaintiffs admission, Dr. Robert Saucier examined him for a family practice consult. Dr. Saucier noted the presence of the Foley catheter, visible
 
 *1071
 
 bruising of the plaintiffs penis and the presence of blood in the plaintiffs urine. Subsequently, the plaintiff developed gross hematuria (a large amount of blood in the urine). On December 27, 2005, Dr. McAl-ister consulted Dr. Ernesto A. Spinazze, a urologist, to examine the plaintiff with regard to the hematuria. Dr. 12Spinazze noted small blood clots in the tubing of the plaintiffs catheter, ecchymosis (purple discoloration of the skin) of the plaintiffs penis and scrotum and the presence of “blood-tinged” urine in the catheter. Dr. Spinazze ordered a cystogram and a CT scan of the plaintiffs abdomen and pelvis. He also ordered that the Foley catheter be left in place.
 

 On January 3, 2006, the plaintiffs catheter was supposed to have been removed and another catheter inserted. The nurses notes revealed that the nursing staff was unsuccessful in removing the catheter; however, the following day, the catheter was removed and a new catheter was inserted. The plaintiff testified that prior to the insertion of the catheter, he told the nurse that it was not the right catheter and that it was too large. He also testified that the nurse forced the catheter into his penis, causing extreme pain.
 

 On January 5, 2006, the plaintiff was discharged from Schumpert with the catheter in place. He was followed by Dr. Spinazze and other physicians at Regional Urology. On January 12, 2006, the catheter was removed in accordance with Dr. Spinazze’s orders. Thereafter, the plaintiff developed difficulty urinating. On January 17, 2006, plaintiff returned to the emergency room at Schumpert, and, by then, his urine stream had stopped completely. The nurses made multiple attempts to insert a Foley catheter, but were unable to do so. A physician was eventually able to insert the catheter. On January 23, 2006, the plaintiff was seen by Dr. Tobin Grigsby, who noted that the catheter remained in place, and the plaintiff had developed cramping, which was consistent with bladder spasms. At some |spoint, the plaintiff was examined by Dr. Spinazze, who determined that the plaintiff had a bulbar stricture.
 
 [1]
 
 On February 7, 2006, the plaintiff underwent a cystoscopy and internal urethrotomy.
 
 [2]
 
 However, the plaintiff continued to experience difficulty urinating, and the procedure was repeated on March 15, 2006. The catheter continued to cause the plaintiff severe pain, so he returned to Dr. Spinazze on March 25, 2006 to have it removed. According to the plaintiff, the catheter was difficult to remove, so a nurse at Regional Urology twisted the catheter until it loosened and removed it. Plaintiff testified that he discharged blood and tissue from his penis when the catheter was removed. Plaintiff alleged that, as the result of the negligence of the nurses and physicians involved, he is now impotent and has had to endure several surgical procedures.
 

 The plaintiff filed a claim under the Louisiana Medical Malpractice Act, LSA-R.S. 40:1299.41,
 
 et seq.,
 
 against Dr. Spi-nazze, Dr. McAlister and Schumpert.
 
 [3]
 
 On April 15, 2008, a medical review panel unanimously concluded that Dr. McAlister and Dr. Spinazze met the applicable standard of care. The panel also concluded that the nursing personnel did not breach
 
 *1072
 
 the applicable standard of care. The panel stated:
 

 It is quite common in injuries involving urethral stricture that tissue and blood can be seen when catheters are removed. Moreover, after a urethral injury that may involve scarring, a catheter procedure can be quite |4painful, particularly if a stricture is present. In such an event, the choice of a Foley catheter is appropriate. The Panel believes that the choice of catheter was appropriate. The Panel also notes that Mr. Reilly, based on the medical records, was a very demanding patient. Moreover, catheterizations in younger patients [are] frequently somewhat painful. The Panel believes that the nursing personnel acted reasonably in connection of [sic] the care provided to Mr. Reilly.
 

 * * *
 

 The Panel believes that Mr. Reilly’s residual impotence is most likely causally related to the severe trauma which he sustained in December 2006, when the horse fell on him.
 

 On July 18, 2008, the plaintiff filed a petition for damages against the same parties. The plaintiff alleged that the defendants were negligent in failing to: (1) use the appropriate technique to insert and/or remove a urinary catheter; (2) use the appropriate type of catheter; (3) use due care expected of a physician and/or employees within a medical facility under the circumstances; and (4) provide medical care consistent with the appropriate standards.
 

 Following discovery, Schumpert filed a motion for summary judgment, contending the plaintiff lacked the necessary expert medical testimony to support his claims against the hospital and/or its employees.
 
 [4]
 
 In support of the motion, Schumpert relied upon the opinion of the medical review panel, which found no deviation from the standard of care by the defendants. Schumpert also relied upon a copy of the plaintiffs answers to interrogatories, in which the plaintiff stated that he did not have any retained experts.
 

 |fiThe plaintiff opposed the motion for summary judgment, submitting an affidavit from Mary L. Rinaldi, a registered nurse, who had opined that Schumpert had breached the standard of care in treating the plaintiff. In her affidavit, Ms. Rinaldi attested that she had reviewed the plaintiffs medical records, and after summarizing the medical records, Ms. Rinaldi questioned Dr. Spinazze’s decision to leave the catheter in place after the results of the CT and cystogram showed that the plaintiffs bladder was elongated. Ms. Rinaldi stated, “I question why the catheter was not removed at that time simply because common sense would make one believe that the catheter itself was causing trauma, thus an increase in bleeding.” Ms. Rinaldi also questioned the physicians’ decision to leave the catheter in place from December 18, 2005, until January 3, 2006, stating, “Rarely is a Foley catheter left in a 48 year old man for more than 3 days.” Ms. Rinaldi noted that one physician’s notes had made reference to the plaintiffs use of opiates without making reference to the plaintiffs urinary retention. She stated, “I find that interesting because opiate use can directly cause major issues with the inability to empty the bladder.” Additionally, Ms. Rinaldi took issue with a physician’s notes concerning the plaintiffs continued request for narcotics. In conclusion, Ms. Rinaldi opined:
 

 It is my opinion that the above issues have resulted in both urinary and sexual
 
 *1073
 
 impairment for Mr. Reilly due to the defendant’s negligence.... Prior to this accident, Mr. Reilly never had problems passing urine or erectile dysfunction. No doubt these issues occurred secondary to nerve and structural damage resulting from [F]oley catheter mismanagement by the defendants. It is very clear that the life as a 48 year old male will never be the same due to this negligence.
 

 | i;The district court granted summary judgment, finding that Ms. Rinaldi’s affidavit was inadmissible, and even if it was admissible, it was insufficient to defeat summary judgment with regards to Schumpert. The plaintiff appeals.
 

 DISCUSSION
 

 The plaintiff contends the district court erred in rejecting Ms. Rinaldi’s affidavit. The plaintiff argues that Ms. Rinaldi’s assessment “makes it clear that plaintiffs troubles began on January 3 and 4, 2006 after the nurses provided substandard treatment, and the nurses and others were at fault.” The plaintiff also argues that genuine issues of material fact existed, and therefore, summary judgment is precluded.
 

 A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant.
 
 Samaha v. Rau,
 
 2007-1726 (La.2/26/08), 977 So.2d 880;
 
 Duncan v. USAA Ins. Co.,
 
 2006-363 (La.11/29/06), 950 So.2d 544; See also LSA-C.C.P. art. 966. Appellate courts review summary judgments
 
 de novo,
 
 while considering the record and all reasonable inferences drawn from the record in the light most favorable to the non-movant.
 
 Hines v. Garrett,
 
 2004-0806 (La.6/25/04), 876 So.2d 764;
 
 Austin v. Bundrick,
 
 41,064 (La.App.2d Cir.6/30/06), 935 So.2d 836. Summary judgment is warranted only if there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(C)(1). In
 
 Hines, supra,
 
 our supreme court stated:
 

 In ruling on a motion for summary judgment, the judge’s role is not to evaluate the weight of the evidence or to 17determine the truth of the matter, but [is] to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party’s favor. A fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of a legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate.
 

 Id.
 
 at 765-66.
 

 The burden of proof remains with the movant. LSA-C.C.P. art. 966(C)(2). However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense.
 
 Id.
 
 Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
 
 Id.
 

 To establish a claim for medical malpractice, a plaintiff must prove, by a preponderance of the evidence: (1) the standard of care applicable to the defen
 
 *1074
 
 dant; (2) that the defendant breached that standard of care; and (3) that there was a causal connection between the breach and the resulting injury. LSA-R.S. 9:2794(A). A determination of whether a hospital has breached the duty of care to a particular patient depends upon the circumstances and facts of the case.
 
 Hunt v. Bogalusa Community Medical Center,
 
 303 So.2d 745 (La.1974);
 
 Clark v. G.B. Cooley Service,
 
 35,675 (La.App.2d Cir.4/5/02), 813 So.2d 1273.
 

 A hospital is responsible for the negligence of its nurses under the respon-deat superior doctrine.
 
 Hinson v. The Glen Oak Retirement System,
 
 37,550 (La.App.2d Cir.8/20/03), 853 So.2d 726,
 
 writ denied,
 
 2003-2835 (La.12/19/03), 861 So.2d 572;
 
 The Estate of Wilburn v. Leggio,
 
 36,534 (La.App.2d Cir.3/19/03), 842 So.2d 1175,
 
 writ denied,
 
 2003-1096 (La.6/6/03), 845 So.2d 1095. The liability imputed to the medical facility is to be viewed in light of the employee’s actions.
 
 Hinson, supra; In re Triss,
 
 2001-1921 (La.App. 4th Cir.6/5/02), 820 So.2d 1204.
 

 Nurses and other health care providers are subject to the same standard as physicians.
 
 Cangelosi v. Our Lady of the Lake Regional Medical Center,
 
 564 So.2d 654 (La.1989);
 
 Hinson, supra.
 
 It is a nurse’s duty to exercise the degree of skill ordinarily employed, under similar circumstances, by the members of the nursing or health care profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his or her best judgment, in the application of his or her skill to the case.
 
 Hinson, supra; King v. State, Dept. of Health and Hospitals,
 
 31,651 (La.App.2d Cir.2/24/99), 728 So.2d 1027,
 
 writ denied,
 
 99-0895 (La.5/7/99), 741 So.2d 656.
 

 In the instant case, pursuant to the above statutory and jurisprudential rules, the plaintiff must establish the standard of care applicable to the nursing staff at Schumpert, a violation of that standard of care and a causal connection between the nurses’ alleged negligence and the plaintiffs injuries resulting therefrom. See,
 
 Pfiffner v. Correa,
 
 1994-0924, 1994-0963, 1994-0992 (La.10/17/94), 643 So.2d 1228;
 
 Hinson, supra.
 
 Expert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony.
 
 Samaha, supra; Pfiffner; supra; Tillman v. Eldridge,
 
 44,460 (La.App.2d Cir.7/15/09), 17 So.3d 69.
 

 Courts in this state have not been reluctant to accept the testimony of registered nurses with regards to the standard of care and alleged negligence of nurses and certified nursing assistants. See,
 
 Hinson, supra; Hall v. Our Lady of the Lake R.M.C.,
 
 2006-1425 (La.App. 1st Cir.6/20/07), 968 So.2d 179;
 
 Newsom v. Lake Charles Memorial Hospital,
 
 2006-1468 (La.App. 3d Cir.4/4/07), 954 So.2d 380,
 
 writ denied,
 
 2007-0903 (La.6/15/07), 958 So.2d 1198.
 

 In the instant case, the plaintiff introduced the affidavit of Ms. Rinaldi. The district court found that the affidavit was inadmissible, stating:
 

 [Ojn the issue of whether the plaintiffs affidavit should even be admitted, of course the Court is mindful that in a medical malpractice case that expert opinion testimony is required to defeat the summary judgment if the defense has, and in this case particularly reified] on the ruling of the Medical Review Panel. I don’t believe that the affidavit of the nurse is sufficient to defeat summary judgment, so I would rule in favor
 
 *1075
 
 of the defense that the affidavit should not be admitted. However, I will go even further and say that even if it was admitted, I don’t believe it — I believe it goes beyond the scope of what the expertise of a registered nurse would be, particularly when her affidavit is really addressing what the different doctors did. I agree with defense counsel that [in] my reading of her affidavit, I was never able to see where she really addressed ... what the nurses may have done or may have failed to do, the nurses at Schumpert. So, even if I would admit the affidavit, I still believe that it is | innot sufficient to raise such material issues of fact that would defeat the Motion for Summary Judgment, which primarily relies on the finding of the Panel.
 

 We agree. Our review of the record reveals that Ms. Rinaldi went to great lengths to express her opinion of what the
 
 physicians
 
 involved should or should not have done. More importantly, Ms. Rinaldi made no mention of any alleged negligent acts on the part of the
 
 nurses
 
 involved. Additionally, there is no mention in the affidavit of the applicable standard of care for the nurses involved and/or whether the nurses breached that standard. Therefore, we find that the district court was correct in finding that Ms. Rinaldi was not qualified to express any opinion concerning any negligence or a breach of the standard of care on the part of the physicians. Accordingly, we find no error in the district court’s grant of summary judgment in favor of Schumpert. This case is remanded to the district court for further proceedings.
 

 CONCLUSION
 

 For the reasons set forth herein, we affirm the district court’s grant of summary judgment in favor of Christus Health Northern Louisiana, d/b/a Christus Schumpert Health System, and remand for further proceedings. Costs of the appeal are assessed to the plaintiff, William James Reilly.
 

 AFFIRMED; REMANDED FOR FURTHER PROCEEDINGS.
 

 [1]
 

 . A bulbar stricture is an area of hardened tissue in the urethra, which narrows the urethra and reduces its diameter.
 

 [2]
 

 . A urethrotomy is an operation which involves the incision of the urethra to relieve a stricture.
 

 [3]
 

 .Christus Schumpert Rehab was also named as a defendant, but was voluntarily dismissed from the proceedings.
 

 [4]
 

 . The case against Dr. Spinazze and Dr. McAlister is still pending.