BROWN, Chief Judge.
| gThis is a medical malpractice case. Plaintiffs are Claude Prine, the surviving spouse of Mary Prine, and the couple’s two adult children, Toni Prine Shumate and David Prine. Plaintiffs allege that defendant, Dr. Donovan W. Bailey, was Mrs. Prine’s primary care physician and that he breached the applicable standard of care by failing to recommend colorectal cancer screening for Mrs. Prine after she reached 50 years of age. Plaintiffs allege that de *331 fendant’s medical negligence caused Mrs. Prine’s wrongful death.
In April of 2001, Dr. Bailey gave Mrs. Prine a “Stool Occult Blood Test Kit.” She returned the slides as instructed. The slides tested positive, and Dr. Bailey sent Mrs. Prine to a gastroenterologist who performed a colonoscopy and found a large mass in her ascending colon. Mrs. Prine was diagnosed with colon cancer. On May 21, 2001, the tumor was surgically removed. Mrs. Prine, however, died on June 20, 2001, at the age of 58. The | acause of death was determined to be pulmonary embolus secondary to deep vein thrombosis. Plaintiffs allege that these disease processes were complications of Mrs. Prine’s underlying colon cancer.
The cause of action was submitted to a medical review panel. The panel noted but did not address the question of the physician’s duty to recommend colon cancer screening; instead, it reasoned that Mrs. Prine did not die as the result of colon cancer. Specifically, the panel stated that the cancer was timely diagnosed and addressed by surgical intervention. Implicitly, the panel found that the applicable standard of care was not breached. The panel concluded that: “Mrs. Prine died as a result of a pulmonary embolism. By history, this was most likely as a result of her known peripheral vascular disease.” Following this decision this wrongful death and survival action was filed.
After trial, the court found that “[T]he legal issue is whether Dr. Bailey was Mrs. Prine’s ‘primary health care provider.’” The trial court found that Dr. Bailey was not and thus “did not have a duty to offer Mary Prine colorectal screening.” It is from this judgment that plaintiffs have appealed. We affirm.

Discussion

14A cause of action based on the negligence of a health care provider consists of the following elements: 1) a duty of care owed by the health care provider to the injured party; 2) breach of that duty by failure to abide by the appropriate standard of care; 3) a causal connection between the breach and the patient’s injury or death; and 4) damages. La. R.S. 9:2794; Gibson v. Bossier City General Hosp., 594 So.2d 1332 (La.App. 2d Cir. 1991). In the case under review, the first element of the cause of action that must be established is whether Dr. Bailey owed Mrs. Prine a duty to advise or offer her colon cancer screening. If such a duty of care was not owed then Dr. Bailey cannot be found liable and the other essential elements of a malpractice case — breach of the appropriate standard of care, causation and damages — are not reached.
The relationship at the relevant time between doctor and patient determines the duty owed. There is apparent agreement that since 1997 colorectal screening by he-moccult, flexible sigmoidoscopy or colonos-copy should be recommended to patients starting at age 50. There is likewise agreement that the “primary health care provider” is responsible for recommending such screening. Exactly who is such a primary health care provider is not defined but considered generally as one who manages and monitors a patient’s health. That is, one who practices preventive or wellness 1 ¿medicine, which includes pediatricians, internists, family practitioners, general practitioners, obstetricians, and gynecologists.
At the outset, plaintiffs argue that our review should be de novo. Plaintiffs assert that the trial court disregarded expert evidence adduced at trial and merely substituted its own conclusions and opinions in reaching its final judgment. Although the trial court did not refer to any particular expert in its reasons for judgment, it is clear that the trial court relied upon all of *332 the expert testimonies in determining the definition of a primary health care physician and the standard of care regarding the need for colorectal screening. In addition, the trial court correctly noted that there was no statute, regulation or scholarly writings definitively answering the primary care physician question. There was no written contract between Mrs. Prine and Dr. Bailey. Thus, the court necessarily had to examine the particular facts and circumstances of the case to determine the professional relationship between the doctor and patient. We must review this factual question under the manifest error standard.
Appellate review of the trial court’s findings in a medical malpractice action is limited. Corley v. State, Dept. of Health and Hospitals, 32,613 (La.App.2d Cir.12/30/99), 749 So.2d 926. If the record, when read in its entirety, supports the fact-finder’s conclusions and those conclusions are | (¡reasonable, an appellate court cannot reverse or modify the trial court’s judgment based on those factual conclusions. An appellate court can only reverse a fact-finder’s determinations when: (1) it finds from the record that a reasonable factual basis does not exist for the findings of the trial court, and (2) it further determines that the record establishes that the findings are manifestly erroneous. Lovelace v. Giddens, 31,493 (La.App.2d Cir.02/24/99), 740 So.2d 652, writ denied, 99-2660 (La.11/24/99), 750 So.2d 987. When expert opinions contradict concerning compliance with the applicable standard of care (or, as in this case, who was the primary care physician), the trial court’s conclusions will be granted great deference. It is within the province of the fact-finder to evaluate the credibility of such experts and their testimony. King v. State ex rel. Dept. of Health and Hospitals, 31,651 (La.App.2d Cir.02/24/99), 728 So.2d 1027, writ denied, 99-0895 (La.05/07/99), 741 So.2d 656; Gibson v. Bossier City General Hospital, supra.
As noted above, the determinative issue of this appeal is whether defendant was Mrs. Prine’s primary health care physician. There are differing views on what constitutes a primary health care physician. Both of the parties offered expert testimony in support of their position regarding whether defendant was Mrs. Prine’s primary health care physician. In regard |7to the standard of care, the medical experts agreed that since 1997, some form of colorectal screening was to be administered or offered to patients over the age of 50. This is the standard whether applying the locality or national rule.
Plaintiffs’ expert was Dr. David Dies, who is board certified in internal medicine, gastroenterology, and hepatology and served as a faculty member at LSU Shreveport Health Sciences Center as an instructor of medicine. At the time of his testimony he was a member of Gastrointestinal Specialists, which is the largest gastrointestinal group in north Louisiana.
Dr. Dies characterized defendant’s medical practice as a primary care practice. According to Dr. Dies, primary care physicians are those physicians who provide general medical care to their patients, including pediatricians, internists, family practitioners, general practitioners, and obstetrics and gynecology physicians. Dr. Dies opined that defendant was acting like Mrs. Prine’s primary care physician. Furthermore, Dr. Dies testified that defendant breached the standard of care by not offering Mrs. Prine colorectal screening once she turned 50 years of age and because of this failure to offer screening, defendant increased the risk of Mrs. Prine developing colon cancer, which was a substantial contributing factor to the death of Mrs. Prine.
*333 |sOn cross-examination, Dr. Dies testified as to certain factors that are important when determining whether an individual’s doctor is her primary care physician. An important factor is whether a doctor is making referrals and receiving reports back. Not getting reports back from other doctors is a factor that goes against the finding of a primary health care relationship. Dr. Dies admitted that defendant would refer Mrs. Prine to certain doctors, but would not get reports back from those doctors. In addition, Dr. Dies testified that Mrs. Prine’s visits to defendant were sporadic and at irregular intervals and even went on to state that Mrs. Prine used defendant on an “as needed” basis or for acute issues. The timing and nature of patient visits are also factors in determining a primary health care doctor-patient relationship. Dr. Dies also agreed that one doctor’s office can house both primary care patients and as-needed patients.
We note additional factors in plaintiffs’ favor. Dr. Bailey practiced in the small town of Lake Providence, Louisiana. He had completed a year’s internship in family practice but was not board certified or board eligible. Dr. Bailey treated other members of Mrs. Prine’s family. See Prine v. Bailey, 42,282, (La.App.2d Cir.08/15/07), 964 So.2d 435. Dr. Bailey considered his practice to be a family practice. These factors certainly support a finding that Dr. Bailey was Mrs. Prine’s primary care physician and that during the 1 ^relevant time starting in 1997 he treated Mrs. Prine but did not offer colorectal screening until April 2001. Dr. Bailey also never performed a wellness exam. This, however, is not the end of the story.
Defendant’s experts and the medical review panel members share the same or similar opinion as Dr. Dies in regard to what defines a primary care physician; however, they believed that defendant was not Mrs. Prine’s primary health care physician.
Dr. Kenneth McDonald was accepted by the court as an expert in the field of family practice arid was a member of the medical review panel who found in favor of defendant. He has practiced at the Delhi Clinic, a family practice, for over 31 years. Dr. McDonald defined a family practice physician as one who assumes the overall care of a patient. Dr. McDonald recognized that within one type of practice there can be different types of patients; acute care patients and overall health care management patients. He was of the opinion that defendant saw Mrs. Prine infrequently and irregularly for acute care or for specific aliments. Dr. McDonald noted that Mrs. Prine was seeing other medical persons for her primary or overall health care management and that defendant was not receiving the test results from Mrs. Prine’s other doctors.[1] Dr. McDonald testified that his panel opinion was derived in part from the fact that defendant was not being given 110the results of any of Mrs. Prine’s tests (defendant was not kept appraised of Mrs. Prine’s wellness care); Mrs. Prine was given preventative exams by other medical professionals (Wellness exam by *334 Nurse Liggen, a nurse practitioner, and chest x-rays by Dr. Edny); and defendant was not listed as Mrs. Prine’s doctor on various medical records (Dr. Walker, an OB-GYN, was listed as Mrs. Prine’s physician on the available medical records). Dr. McDonald also observed that in 1998, Mrs. Prine failed to return a hemoccult slide to Nurse Liggen and failed to return to Dr. Edny’s office for a follow-up chest x-ray. In connection with these visits, defendant was neither the referring physician nor did he receive any reports regarding their treatment of Mrs. Prine.
On cross-examination, Dr. McDonald admitted that if defendant testified that he was Mrs. Prine’s family practice physician then the panel opinion may have been wrong and defendant would have had certain duties. In his deposition Dr. McDonald stated that he probably would have offered colorectal screening to Mrs. Prine. Dr. McDonald testified that the standard of care for a physician holding himself out as a family practitioner was to offer his patients over the age of 50 colo-rectal screening. Dr. McDonald would only consider himself a patient’s primary care physician if he, Dr. McDonald, was coordinating the care of the patient, i.e. either sending a | npatient to the gynecologist or receiving the results from the gynecologist. He refused to testify that Mrs. Prine was the subject of substandard medical care.
On redirect, Dr. McDonald maintained that the he and the panel made its decision that-defendant did not fall below the standard of care because Mrs. Prine’s visits were infrequent and the visits were for acute care. He also reiterated the ability to have different groups of patients within one practice regardless of the name of the practice.
Dr. Leonard Paul Neumann, Jr., another panel member who found in favor of defendant, testified as an expert in the specialty of internal medicine. Dr. Neu-mann opined that defendant was not Mrs. Prine’s primary care physician because defendant was treating Mrs. Prine only for acute care, walk-in care, or as-needed care and never undertook Mrs. Prine’s overall health care management. His testimony was similar to that of Dr. McDonald. In addition, Dr. Neumann stated that it is the physician-patient relationship that determines whether a primary care relationship exists, and not the name of the doctor’s practice or the signage of the building housing the doctor’s practice.
Dr. Kermit Lamar Walters, Jr., also testified on behalf of defendant. Dr. Walters graduated from Tulane University Medical School in 1974 and 112has been engaged in the practice of medicine in Louisiana since 1978. Although not board certified, he treats walk-in patients for acute care at the Urban Medical Clinic. Dr. Walters was accepted by the court as an expert in the field of general practice medicine. He described his practice as having three different patient types who are all serviced under one roof. The relevant subpart for our discussion are those patients who come in with acute care needs such as sinusitis, sore throat, earaches, etc. Dr. Walters testified that Mrs. Prine’s visits to defendant were infrequent and sporadic. In his opinion, defendant only saw Mrs. Prine for acute or as-needed care and Mrs. Prine sought wellness care from Nurse Liggen.
Dr. George Wyatt Webb testified as a general practitioner expert. Dr. Webb graduated from LSU Medical School, Shreveport in 1983 and is currently practicing in Mer Rouge at his clinic, The Family Medical Clinic. At his clinic, Dr. Webb deals with both acute care patients as well as patients who require disease management care. Dr. Webb refers to his practice as a general practice. Dr. Webb *335 testified that Mrs. Prine’s visits to defendant were of a problem-focused nature. Dr. Webb testified that defendant was under no obligation to offer colorectal screening to Mrs. Prine. He admits that although the standard of care is for primary physicians to offer colorectal screening, and family physicians are labeled as primary care physicians, it is | iathe nature of the relationship between the patient and the doctor that determines if there is a primary care relationship triggering the duty to offer colorectal screening. In Dr. Webb’s view, Mrs. Prine was not a wellness patient of defendant because of her sporadic visits for acute needs, and her use of other doctors for wellness or overall health needs.
The deposition of Dr. Ricky Garland Davidson, a member of the medical review panel and an expert in the field of family practice, was entered on behalf of defendant. Dr. Davidson is licensed to practice in Louisiana and his practice is named Louisiana Family Practice Associates. Dr. Davidson graduated from LSU Medical School in New Orleans in 1998, did his residency at LSU Shreveport in family practice, and has been board certified in family medicine since 2001. In his view, the scope of family practice is taking care of a family unit and taking care of general needs of patients of all ages. It can encompass anything from acute to primary care to preventative medicine. Consistent with the other panel members, Dr. Davidson’s view was that defendant saw Mrs. Prine irregularly or infrequently for acute care problems, which is a factor that demonstrated that defendant was only providing acute care to Mrs. Prine. Another factor important to Dr. Davidson was that defendant did not refer Mrs. Prine to any doctors until April 2001 when Mrs. Prine came in looking pale. On that | ^particular visit, defendant ordered blood work, which showed that Mrs. Prine was anemic, provoking defendant to order the hemoccult that led to the discovery of colon cancer. Dr. Davidson opined that Nurse Liggens was Mrs. Prine’s primary health care provider. Another factor was defendant’s lack of being kept apprised regarding a back surgery Mrs. Prine underwent. Instead of receiving medical records from other doctors, a typical primary care physician function, defendant sent records to Dr. Walker, Mrs. Prine’s OB-GYN. Dr. Davidson also noted that Dr. Walker was listed as Mrs. Prine’s physician on various medical records.
Dr. Davidson pointed out that in March 1998, Mrs. Prine went to the Family Practice Clinic and saw a nurse practitioner, Elaine Howington Liggen, specifically for a wellness exam. At that time Nurse Lig-gen provided Mrs. Prine with a hemoccult exam kit and testified that Mrs. Prine stated, “I don’t want to know if there is something wrong with me.” Mrs. Prine did not return any slides.
He also observed that Mrs. Prine saw Dr. Gene Walker, an OB-GYN practicing in Vicksburg, Mississippi, for a wellness exam in 1993. Dr. Walker referred Mrs. Prine to an orthopedist who performed a laminectomy. Dr. Walker received reports from this surgery as well as reports from other physicians, including Dr. Bailey.
LsIn this case, there was conflicting testimony presented by both parties. The issue of whether a breach of the standard of care occurred is a factual question over which the trial court has great discretion and the resolution of which turns in large part upon the evaluation of the credibility of the testimony. Based upon the evidence synopsized above, we cannot say that the trial court was manifestly erroneous in finding that defendant was not Mrs. Prine’s primary health care physician and *336 therefore he did not fall below the standard of care by failing to offering her colorectal cancer screening.

Conclusion

For the reasons set forth above, the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiffs.

. In March 1998, Mrs. Prine went to the Family Practice Clinic and saw a nurse practitioner, Elaine Howington Liggen, specifically for a wellness exam. At that time Nurse Liggen provided Mrs. Prine with a hemoccult exam kit and testified that Mrs. Prine stated, "I don’t want to know if there is something wrong with me." Mrs. Prine did not return any slides.
Mrs. Prine also saw Dr. Gene Walker, an OB-GYN, practicing in Vicksburg, Mississippi, for a wellness exam in 1993. Dr. Walker referred Mrs. Prine to an orthopedist who performed a laminectomy. Dr. Walker received reports from this surgery as well as reports from other physicians, including Dr. Bailey.